S. C. & P. R. R. Co. v. Finlayson.

THE SIOUX CITY AND PACIFIC RAILROAD COMPANY, PLAINTIFF IN ERROR, v. ALEXANDER J. FINLAYSON, DEFENDANT IN ERROR.

1. **Instructions.** It is the duty of the district court upon the trial of a cause to a jury, to inform the jury by its instructions of the issues in the case on trial. But if on such trial the issues are imperfectly stated, the party desiring a more specific instruction, must call the attention of the court thereto by a request for a correct instruction in order to secure a review of such failure by the supreme court.

2. ———: CITATIONS ON MARGIN. A judgment will not be reversed for the reason that the successful party in the district court, in preparing and submitting to the court instructions to the jury, enters on the margin thereof references to the authorities supposed to sustain the instructions, unless it be shown that the opposite party was prejudiced thereby. But such practice should not be permitted by the courts, and such references should be obliterated before sending the instructions to the jury

3. ———: CONSTRUCTION. Instructions given to a jury must be construed together, and if, when considered as a whole, they properly state the law, it is sufficient.

4. **Railroads:** DAMAGES BY EXPLOSION : NEGLIGENCE. An instruction as follows: "Before plaintiff can recover, you must be satisfied by a preponderance of evidence that the defendant owned and was operating the locomotive boiler and engine thereto attached at the time of the alleged explosion; that there was an explosion of said boiler by reason of negligence on the part of defendant, and that this plaintiff was damaged by reason of said explosion," *Held*, Not erroneous when taken in connection with other instructions given to the jury.

5. **Master and Servant:** DAMAGES : NEGLIGENCE. If an employer knowingly furnishes an employe defective machinery with which to work, and which machinery though dangerous is not of such character that it may not be reasonably used by the use of care, skill, and diligence, and the employe in obedience to the requirements of the employer uses and opeiates such dangerous machinery carefully and skillfully, believing there is no immediate danger, and when it is reasonably probabl it can be safely operated with such care, the employe does not assume the risk, and if he is injured by such machinery without

fault or negligence on his 'part, the employer will be held liable for the damages resulting from such injury.

6. ———: ———: INSTRUCTIONS: ERROR NOT PREJUDICIAL. The following instruction was given to the jury : "If the engine furnished by defendant for the use of plaintiff in its service had been in service as long as it could with safety be used without examination and overhauling, and defects existed in the boiler, which could have been ascertained by the exercise of reasonable and ordinary care and prudence, it was the duty of the defendant to have ascertained and remedied such defects, instead of suffering the plaintiff to be exposed to the peril of an explosion, and if the defendant failed to perform such duty it is liable to the plaintiff for the damages which are the direct result of such failure, unless the plaintiff contributed thereto by negligence on his part." *Held*, That the words "instead of suffering the plaintiff to be exposed to the peril of an explosion," while quite unnecessary, were not prejudicial.

7. ———: ———: NOTICE TO AGENTS. The following instruction was given to the jury on the trial : " Even if the agents of the defendant who had charge of the engines on defendant's road and the duty of their repair did not positively know that the engine was unsafe, yet if it was in fact unsafe and they had received such reports in regard to it as ought to have put them on their guard and to have led by the use of proper diligence to knowledge of the facts, the defendant must be held to the same liability as if their agents had actual knowledge." *Held*, Not erroneous as not designating particularly the agents by whose knowledge the defendant would be held liable, as, when applied to the evidence, there could be no mistake as to the agents referred to.

8. Evidence: EXPERTS. Witnesses who show scientific, or practical skill and knowledge and experience as to matters of which they testify, are competent as experts. The weight to be given to their testimony is for the jury to determine.

9. Depositions: OBJECTIONS. Objections to depositions, except upon the grounds of incompetency or irrelevancy, must be reduced to writing and filed before the commencement of the trial, or they must be disregarded by the court. Sec. 390, civil code.

10. Evidence: BOOKS OF SCIENCE. Books of science or art are competent evidence when shown to be reputable or standard works.

11 Trial: PHYSICAL EXAMINATION OF PLAINTIFF SUING FOR

INJURIES. It is not error for the court during the progress of a trial to refuse to order the plaintiff, who sues for injuries to his person, to submit to an examination of his person by physicians who are witnesses for the defendant, in the absence of any showing whatever that justice would be promoted thereby, and especially so when the plaintiff submits to an examination by such witnesses in the presence of the jury.

12. **Verdict.** The verdict is sustained by sufficient evidence.

13. ——— : DAMAGES EXCESSIVE. The case examined and the verdict held to be excessive, and a new trial ordered unless a remittitur of $3,000 is filed, in which case the judgment for $6,250 will be affirmed,

ERROR to the district court for Washington county. Tried below before NEVILLE, J.

*Joy, Wright & Hudson,* and *L. W. Osborn,* for plaintiff in error.

*George W. Doane* and *Ballard & Walton,* for defendant in error.

REESE, J.

This is an action against the plaintiff in error, the Sioux City & Pacific Railroad Company, for damages resulting from a personal injury caused by the explosion of an engine of said company, and on which defendant in error was at the time engaged and employed as an engineer. The petition alleges that the engine became and remained defective and dangerous .through the negligence of the plaintiff in error. The answer of plaintiff in error admitted the explosion of the boiler on the engine, but denied all negligence or carelessness of the company; denied that the plaintiff had received the injuries as stated, and averred that the explosion was caused by the contributory negligence of the defendant in error.

There was a jury trial which resulted in a verdict of $9,250 in favor of defendant in error.

The first error assigned by the plaintiff in error is, that there was a failure on the part of the trial court to properly state to the jury the issues in the case in its instructions, and in this connection our attention is specially called to the first instruction given by the court. This instruction is as follows: "The plaintiff sues in this cause for damages alleged to be sustained by reason of the explosion of a locomotive boiler owned and operated by the defendant." It is, perhaps, hardly fair to say that by this instruction the trial court intended to state the issues involved in the case or any part thereof, but rather that he intended to give to the jury a short but general idea of the character or nature of the action. However that may be, it is clear that by the whole instructions given to the jury by the court the issues were virtually stated, though not particularly stated as such. The law bearing upon every issue in the case was carefully given, and the jury were informed that if they found the facts as alleged by plaintiff in error in its answer without referring to it, they must find for the defendant, plaintiff in error. It is true that as a matter of practice it would be better for the trial court to state the issues by an instruction given for that particular purpose. Yet it is not always done, and in the absence of any effort on the part of the parties to have it done, we do not think a judgment should, for that reason, be reversed. It has been decided by this court, and we take it to be now settled in this state, that before the complaint that an instruction is not sufficiently explicit will be regarded, the matter must have been brought to the attention of the trial court by a request for a satisfactory instruction which was refused. *The B. & M. R. R. Co. v. Schluntz,* 14 Neb., 425. *The Sioux City R. R. Co. v. Brown,* 13 Neb., 317.

The next question presented is, that "the instructions given to the jury at the request of the plaintiff had, indorsed on the margin, citations and references to authori-

ties, stated in the presence of the jury to be in support of the instructions asked." Our attention has not been called to any part of the record which shows what was stated in the presence of the jury, nor that any objection was made thereto and an adverse ruling made. But passing that question, and giving the plaintiff in error the full benefit of it, we fail to see prejudicial error. Again, we say that as a matter of practice we do not approve of such marginal references. They were evidently intended as a memorandum for the benefit of the court and for no other purpose; so that if the court should doubt the correctness of the law as stated in the instruction he could turn to the authorities cited and verify their correctness. When that was accomplished those references should, perhaps, have been obliterated. The *practice* ought not to be encouraged by the courts. But we fail to see the prejudice resulting to either party. It was argued that it might, and naturally would, have a tendency to more fully impress upon the minds of the jury the soundness of the law as stated in the instructions. How could it? It was the duty of the jury to accept the law as given by all the instructions as the law of the case, and that without question. The court is the sole judge of the law. The jury of the facts. Again, what harm could possibly result from the statement in the presence of the jury that the authorities cited supported the instruction. This statement was evidently made to the court. If the authorities thus cited had been read to the court and commented on, by way of argument, by the counsel presenting the instructions, no objection could have been made thereto, and in fact this is a very common custom, approved by courts and the bar in general. If this is allowable we can see no reason why a reference to the authorities under the same circumstances may not be.

Each instruction given by the court upon its own motion was excepted to by the plaintiff in error, but as some

of them seem to us to be more in its favor than against it, we will not examine those which are apparently open to this criticism.

Instruction number two is as follows: "Before plaintiff can recover you must be satisfied by a preponderance of evidence that the defendant owned and was operating the locomotive boiler and engine thereto attached at the time of the alleged explosion. That there was an explosion of said boiler by reason of negligence on the part of defendant, and that this plaintiff was damaged by reason of such explosion." Complaint is made of this instruction for the reason that "it practically told the jury that plaintiff could recover if the defendant was negligent, and left out of view the plaintiff's contributory negligence." Whatever objection of this kind might be urged against this instruction if taken alone, we are convinced that instruction number three, which follows the one complained of, and instruction number four of those asked by the plaintiff in error (defendant below) and given by the court, would remove all objection. Number three is as follows: "Ordinarily, a plaintiff in an action of this character for damages cannot recover where he is guilty of contributory negligence, as contributory negligence may be of various degrees." What is meant by the latter clause of this instruction is explained in instruction number five. The fourth instruction above referred to is, as modified by the court, as follows: "If the jury find from the testimony that plaintiff, prior to the explosion of the boiler upon engine No. two, had been the engineer in charge of said engine, and was such engineer at the time of said explosion, and if you further find that the said plaintiff knew of the defects in the throat-sheet of said engine, and with such knowledge continued in the employment of said defendant, and run and operated said engine without objection, plaintiff cannot recover for any injury he may have sustained by reason of the explosion of the boiler of said engine." When we reflect that the

only contributory negligence alleged against the defendant in error consisted in the fact that he continued to operate said engine after indications of the weakness of the iron was discovered by him and the attention of the proper agents and servants of the plaintiff in error called to the fact, with the request by him that another engine be furnished him, it becomes quite clear that these instructions are, when taken together, unobjectionable.

The facts in this case may be briefly stated to be that the defendant in error had, for about two years, been in the employ of the plaintiff in error as a locomotive engineer on its railroad. That he had had charge of this particular engine for a considerable part of this time. Toward the latter part of this employment he noticed what he conceived to be evidences of weakness in that part of the locomotive known as the throat sheet. He called the attention of the proper officers and agents of the plaintiff in error to this fact, and upon examination it was thought there was no immediate danger, and he was instructed to continue with the engine until such time, in the near future, as they could effect an exchange and cause the necessary repairs to be made. Afterward, seeing, as he thought, increasing signs of weakness in that part of the boiler, he again, and on several occasions, called attention to the facts, when he was informed that another engine would be furnished him in a given time, and requested to continue with the one in question until that time, which he did, and for two days longer, when the accident occurred. During this time he was careful to keep the steam at a comparatively low pressure, and supposed that with this precaution there was no immediate danger. It is not claimed, and cannot be, that the explosion was caused or brought about by any negligent act of his. Under these circumstances it seems to us that the true rule might be stated to be, that if the defective machinery, though dangerous, is not of such a character that they may not be reasonably used by the exercise

of care, skill, and diligence, the servant does not assume the risk. If the servant, in obedience to the requirement of the master makes use of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the master would be liable for a resulting accident. At least such a rule is as favorable to the plaintiff in error as could, in our opinion, be reasonably required by it, and especially would this be true when it is shown that the master was fully informed of the apparent danger and the machinery used upon his request and judgment. *Snow v. Housatonic R. Co.,* 8 Allen, 441. *Colorado, etc., R. R. Co., v. Ogden,* 3 Col., 499. *Patterson, etc., v. Pittsburg R. Co.,* 76 Pa. St., 389. 2 Thompson Negligence, 967. *Keegan v. Western R. R. Corporation,* 8 N. Y., 175. Applying this rule to the instructions we think they correctly state the law.

Complaint is made of instruction number two asked by the defendant in error and given by the court. This instruction is as follows: " If the engine furnished by the defendant for the use of the plaintiff in its service had been in service as long as it could with safety be used without examination and overhauling, and defects existed in the boiler which could have been ascertained by the exercise of reasonable and ordinary care and prudence, it was the duty of the defendant to have ascertained and remedied such defects, instead of suffering the plaintiff to be exposed to the peril of an explosion, and if the defendant failed to perform such duty it is liable to the plaintiff for the damages which are the direct result of such failure, unless the plaintiff contributed thereto by negligence on his part." The objection to this instruction is in reference to the words: " Instead of suffering the plaintiff to be exposed to the peril of an explosion," which are found in the body of the instruction. It is quite difficult for us to see the functions of those words, why they were placed there, or

what good purpose they can accomplish. It is equally as difficult for us to see what harm they can possibly do. Plaintiff contends they are "argument" and "could have no other effect than to arouse the feelings of the jury and enhance the amount of their verdict without any just cause for it." While we can see no particular necessity for the language, as the instruction without it has the same meaning and purport, yet we fail to see anything more in that language than a conclusion, or rather a comparison, which naturally and irresistibly arises in the mind from the instruction as it would be without it. If the plaintiff in error had ascertained " and remedied the defect" instead of doing as it did, it would not have been liable. But failing to do so, "unless the plaintiff (defendant in error) contributed thereto by negligence on his part," the plaintiff in error would be liable. The error is not prejudicial and the judgment will not for that reason be reversed.

The third instruction asked by defendant in error and given by the court is as follows: "Even if the agents of the defendant who had charge of the engines on defendant's road, and the duty of their repair, did not positively know that the engine was unsafe, yet if it was in fact unsafe, and they had received such reports in regard to it as ought to have put them on their guard, and to have led, by the use of proper diligence, to knowledge of the facts, the defendants must be held to the same liability as if their agents had actual knowledge." The complaint as to this instruction is, that "it holds the defendant liable regardless of who of its agents had knowledge of defects of the engine, or to whom reports of such defects were made." This position cannot be maintained. The instruction is intended to apply to the testimony introduced on the trial. The defendant in error claimed that the proper officers and agents had knowledge of the defects of the engine. That *knowledge* was denied by some of them, but the proof showed that the engine had been reported to them as unsafe. If they could

have ascertained as to the truth of those reports, made to them directly by those whose duty it was to make such reports, it was their duty to do so. If they declined or refused to know the facts which by "proper diligence" would have led to an absolute knowledge of those facts, the liability would be the same as if they knew. As to what agents are referred to by this instruction was clearly set forth by the instructions as well as by the whole case.

· It is insisted by the plaintiff in error that the testimony of certain witnesses, whose occupation was that of boiler-makers, was improperly received, as by their own testimony they were incompetent to testify as experts. They all showed that for a long time they had been engaged in making boilers, and some of them showed experience in testing boilers. They testified to their knowledge and experience as to the matters enquired of. Their testimony was clearly competent. The amount of *weight* to which their testimony was entitled was a question for the jury to determine. Courts cannot establish a standard by which to measure expert witnesses. If they show that they have practical skill or scientific knowledge and experience as to the matters under investigation, they are competent to testify.

The deposition of the witness De Haven was taken by plaintiff in error, but read to the jury by defendant in error. Objection was made to the reading of a part of his answer to one of its interrogatories, for the reason that the same was not responsive to the interrogatory. But as the objection was not made and filed before the commencement of the trial, as required by section 390 of the civil code, the court was justified in disregarding it. See also Weeks on Depositions, § 404.

The next objection urged by plaintiff in error is to the admission in evidence of a selection from a book entitled "A Catechism of a Locomotive," by "Forney."

Section 342 of the civil code provides that "historical

works, books of science or art, and published maps or charts, when made by persons indifferent between the parties, are presumptive evidence of facts of general notoriety or interest." This book was sufficiently shown by the testimony of the witness Teal, who was one of the expert witnesses of plaintiff in error, to be a standard work, to admit it in evidence. While it is perhaps true that evidence of that character was required before the book could be admissible, yet the testimony offered being uncontradicted there was enough *prima facie* to admit it.

Much is said by counsel on both sides upon the subject of "comparative negligence" and the relative degrees of care and diligence exercised by the parties to the action. We have failed to find any proof of negligence on the part of defendant in error, and will dismiss that subject without further remark.

The record shows that after the defendant in error had introduced all his testimony on the trial, and had rested his case, the "defendant (plaintiff in error) moved the court to direct the plaintiff to allow the physicians called on the part of the defense to make an examination of his person with reference to his alleged injuries, for which he now seeks to recover. The court ruled that it had no power to make such an order, to which ruling defendant excepts." Error is assigned in this court based upon this record.

If such examination was proper to be made, and if the defendant in error upon application had refused to allow it to be done, we are inclined to believe the court had the *power* to make and enforce such an order. It is fundamental that if a decision or ruling of a court is correct, the fact that the reason assigned therefor by the court, when making it, is not sufficient to sustain the order, the fact of such deficient reason being given will not vitiate the ruling or order. The question now before us is, did the court err in its refusal to make the order requested? We think not.

It is not the province of courts to make useless and unnecessary orders, simply because they are so requested. There was no showing made to the court that permission to make the examination had been refused by defendant in error, nor that any such permission had been requested. There is no showing of any kind that such examination was necessary in order to aid plaintiff in error in making its defense,—indeed there was no intimation made that any good could possibly result or benefit be derived from such an examination. The request was made in the midst of the trial. The court was asked to stop the trial and send out the plaintiff in the suit for examination. Again, this request hardly possessed all the elements of fairness. The court was asked to virtually place the defendant in error in the hands of the defense. It was not sought to have the examination made by disinterested and unbiased surgeons whom the parties might select or the court appoint, but by the " physicians called upon the part of the defense." Again, the record shows that when the witnesses on the part of the defense were placed upon the stand to testify upon the question of the alleged injury, the defendant in error was asked to " step forward and allow the witness to examine him," which he - did. The record further shows that the defendant in error was "asked to remove his coat and vest, which he does, and the witness examines the back, sides, and other portions of the body of the plaintiff; also as to his breathing; also the condition of the eyes, the muscles of the leg, the condition of the tongue and of the pulse." From this it must seem that even if the court had erred by its refusal to make the order, that error was cured by the examination made by consent of defendant in error. The only case cited by plaintiff in error in support of its position is *Schroeder v. The C., R. I. & P. R. R. Co.*, 47 Iowa, 375. But there is a wide distinction between that case and this. In that case the request was made after the jury was impaneled, but

before any of the testimony was heard.    The application was in writing, and requested the examination to be made by a "proper number of physicians, to be selected, in equal numbers, by plaintiff and defendant, and it was proposed by defendant that its own medical officer should not be one of the number,    *    *    *    and in support of this application the affidavit of a surgeon and physician in the employment of defendant was filed, stating that he had professionally attended plaintiff immediately after he was injured, and had made personal observation of plaintiff's condition, and had heard his testimony at the former trial, and it was his belief, based upon these means of knowledge, that his injuries were not of the character claimed by him and that the truth of the matter could be ascertained by a proper personal examination of the plaintiff."    It also appears in that case that an effort was made to procure an examination of plaintiff in the presence of the jury, as was done in this case, but the plaintiff refused to submit to it, and the court would not order it, and that, too, after the plaintiff had testified that his back and internal organs were affected by the injury, and that "one of his legs was disabled to an extent that deprived him of its full use, and that he thought it appeared to be smaller and somewhat shrunken."    Our attention has been called to no other case upon this subject, and we know of no other holding as the Iowa case.    As to the soundness of the position taken by that court we have nothing to say.    The question is not before us.    It is enough to say that under the authority of that case it cannot be made to appear that the ruling of the court in this case was erroneous, or that it abused its discretion in refusing to make the order sought.

The next question presented by plaintiff in error is that the verdict of the jury is not sustained by sufficient evidence.    With the exception hereafter noticed we cannot agree with the counsel for plaintiff in error.    We have already, in some degree, discussed the evidence and facts of

S. C. & P. R. R. Co. v. Finlayson.

the case, and the length of the record must prevent any further discussion thereof. We have carefully examined the record, and conclude the evidence will sustain a verdict for defendant in error.

The last matter presented for consideration is that the verdict is excessive. To this proposition we assent. The testimony shows that at the time he received the injury the defendant in error was about twenty-five years of age. While the testimony of the physicians leave it in doubt as to his final and complete recovery, it appears that at the time of the trial he had so far recovered from his injury as to be engaged in business, and to be able to devote most if not all of his time thereto. The injury is defined and described by the physicians as concussion of the spinal cord, by which a diseased or abnormal condition of the nervous system is produced, affecting his general health to some extent, and depriving him of the ability to engage in active physical labor, and perhaps rendering him unfit to engage in his business as railroad engineer. He has retained his mental faculties to their full extent. At times he is free from pain; at others he has a soreness and pain in his back. There was no laceration of any part of his body, no fracture of any bones. There is supposed to be no injury to the bones of his spinal column. The physical or visible evidences have disappeared, and some of the physicians give it as their opinion that there will ultimately be a substantial but perhaps not a complete recovery.

Believing that the verdict is excessive, the judgment and decision of this court is, that the judgment of the district court be set aside and a new trial granted, unless the defendant in error enter a remittitur of the sum of three thousand dollars within thirty days from this date. If such remittitur is filed, the judgment to the extent of six thousand two hundred and fifty dollars will be affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.