CENTRAL GRANARIES COMPANY V. ISAAC AULT, ADMINIS-
TRATOR.*

FILED DECEMBER 6, 1905.   No. 13,962.

1. **Master and Servant**: HAZARDS OF EMPLOYMENT: NOTICE. Whether
it is incumbent upon a master to warn his servant of the hazards
attending the business in which he is engaged must be deter-
mined from the facts and circumstances shown to exist. A serv-
ant, who from the length or character of previous service or
experience may be presumed to know the ordinary hazards at-
tending the proper conduct of a certain business, is not entitled,
as an absolute right, to the same or similar notice of dangers
incident to the employment as if he was ignorant or inexpe-
rienced in the particular work, and this rule applies to infants
as well as adults.

2. **Facilities**: DUTY OF MASTER. The master is required to provide
only such facilities and conveniences for the use and operation
of machinery by his employees as are in common and general
use.

3. ———: NEGLIGENCE: QUESTION FOR JURY. Whether the master is
guilty of negligence in not providing a safe place for his servant
to perform the labor required of him is a question of fact for
the jury, but what is competent evidence to establish that fact
is a question of law for the court.

ERROR to the district court for Gage county: WILLIAM
H. KELLIGAR, JUDGE. *Reversed.*

*I. R. Andrews* and *Edgar M. Morsman, Jr.,* for plaintiff
in error.

*Hazlett & Jack* and *L. M. Pemberton, contra.*

JACKSON, C.

The plaintiff in the trial court, as administrator of the
estate of Nelse C. Nelson, deceased, recovered judgment
against the defendant in an action wherein it was claimed
that the death of the deceased was caused by the negligent
acts of the defendant. The defendant prosecutes error,

* Rehearing denied. See opinion, p. 255, *post.*

and one of the grounds of complaint is that the verdict and judgment are not sustained by the evidence.

At the date of Nelson's death the defendant was operating an elevator at Filley, Nebraska. The power was provided by means of a gasoline engine placed in a room adjacent to the main building. The engine room was rectangular in shape, 12 feet 10 inches in length from the north to the south, and 7 feet 3 inches in width from the east to the west. The engine is situated in the northwest corner of the room, so that the fly wheels are within $4\frac{1}{4}$ inches from the north wall. There are 2 fly wheels situated 18 inches apart, one on either side of the engine. The power is transmitted to the elevator by a belt. The belt is attached to the engine by means of a pulley on the main shaft of the engine, extending outward from the east fly wheel. From the outer edge of the pulley to the east wall the distance is 35 inches. Attached to the east wall, 44 inches from the floor, is a shelf 12 inches wide and some 7 feet long, leaving a space of 23 inches between the shelf and the outer edge of the pulley. Below this was another shelf 16 inches wide and 23 inches in length, described as being about the height of a man's knee from the floor, leaving a space of 19 inches between the outer edge of the pulley and the lower shelf. From the floor line to the center of the shaft it is $23\frac{3}{4}$ inches. The driving pulley is 12 inches in diameter. The deceased at the time of his death was 16 years and about 11 months of age. He was a boy of ordinary intelligence, and inclined, perhaps, to be careless; a hard working, industrious boy, of good habits and well developed for his age. He was employed by the defendant, and had exclusive charge of the engine room and engine, and owing to the fact that the engine, after being started, required little or no attention, he attended to the loading of cars. This duty required the shoveling of grain away from the spout by means of which the grain was conducted from the elevator into the car, and the changing of the spout from one end of the car to the other. This service it was necessary

to perform in order to prevent the spout from becoming clogged and interfering with the operation of the machinery in the elevator. He had been employed in and about the elevator, during the busy seasons, for about 3 years, during which time the elevator had changed hands 2 or 3 times, and was so employed at the time the defendant acquired and took possession of the elevator, and had been repeatedly warned by former employers to be cautious, to be careful, and not get mixed up with the machinery.

On the day of his death he was first at the elevator; he was seen to go there at about 7 o'clock in the morning, and soon afterwards the machinery was heard in motion. Later the defendant's manager, while on his way to the elevator, heard what he described as a screeching noise. He ran to the elevator, went into the driveway between the engine room and the main building, and saw that the elevator was stopped. He then opened the door of the engine room, and found the engine in operation, and the deceased lying dead on the floor in the space between the east fly wheel and the east wall, with his head, the entire top of which had been crushed off, very near to the fly wheel. No one saw the accident, and no one has undertaken to explain it, except by detailing the circumstances and conditions under which the body was found. It is manifest from the evidence that he went to the elevator, started the engine and commenced loading a car of grain. One end of the car had been filled and the spout changed to the other end, when he returned to the engine room, for some purpose not known. The grain had filled into the car around the spout, and because of the fact that no one was there to shovel it away the spout had filled up until the elevating machinery was clogged, and the pressure had loosened the set-screw fastening the pulley to the elevator shaft, so that the pulley revolved on the shaft without turning the machinery, thus causing the screeching noise heard by the manager. The engine was in perfect repair and there is no pretense of defective machinery.

The theory upon which the plaintiff justifies the recovery is that the space between the pulley on the engine operating the belt and the shelves on the east wall was so narrow that it was unsafe for a person to pass through while the engine was in motion, the danger being that the person passing through would be liable to have his clothing caught between the belt and the pulley, and that the deceased was required to go into this space, by reason of his employment, for tools lying on or hung over the upper shelf, or for oil with which to oil the machinery, and that he did, in fact, meet death in that manner. The oil was contained in cans on the floor beneath the lower shelf. None of the tools were displaced or found lying on the floor, and the oil cans had not been disturbed. Nothing was found on the floor to indicate that the deceased had anything in his hands at the time the accident occurred.

It is insisted that the defendant is liable because of its failure to warn the deceased of the hazards attending the business in which he was engaged. Whether it is incumbent upon a master to so warn a servant must be determined from the facts and circumstances shown to exist. It appears in this case, without controversy, that at the time the defendant took charge of the elevator the deceased was in the employ of its grantor, engaged in the performance of the same duty which he afterwards performed for the defendant, and that he was continued in that service; and the rule is that a servant, who from the length or character of previous service or experience may be presumed to know the ordinary hazards attending the proper conduct of a certain buisness, is not entitled, as an absolute right, to the same or similar notice of dangers incident to the employment as if he were ignorant or inexperienced in the particular work. *Omaha Bottling Co. v. Theiler*, 59 Neb. 257. We think it a fair inference that the deceased was as familiar with the danger incident to his employment, and the liability of injury on account of contact with rapidly moving machinery, as was the defendant. This, in connection with the fact that he had

been warned in his early employment by former managers of the elevator, leaves nothing to the claim of negligence on account of the failure of the defendant to warn the deceased, and does not bring the case within the rule that a master is liable to an infant who has been injured in his service in consequence of being exposed to a danger, which on account of his youth and want of experience he did not fully understand and appreciate. Infants, like adults, assume the ordinary risks of the service in which they engage.

The existence of negligence in providing a place for the deceased to perform the labor required of him was a question of fact for the jury, but it must be established by competent evidence and according to certain fixed rules of liability. What is required of a master is that he use such machinery and appliances as are in common and general use. *Cudahy Packing Co. v. Roy,* 71 Neb. 600; *Weed v. Chicago, St. P., M. & O. R. Co.,* 5 Neb. (Unof.) 623. Measured by the same rule, he would be required to furnish such facilities for the use and operation of the machinery by his employees as are in common and general use, and, where the lack of such machinery and appliances or facilities for the use of the same is relied upon as a cause of action, the burden of proving such failure is upon the party seeking to maintain the action. Does the proof in this case fall within that rule? We think not. It is true that several witnesses testified that they did not regard the passageway between the pulley and the shelves on the east side of the room as being safe when the engine was in motion, but the witnesses who so testified were substantially all of them without experience in the use of that or similar machinery, while witnesses on behalf of the defendant, some of them at least familiar with the use of such machinery and accustomed to the operation thereof, testified that they regarded the passageway as safe, with the exercise of reasonable caution. The operation of such machinery is, of course, dangerous, but the employer is not liable for the

consequences of danger; his liability is to be determined by the existence of negligence. The question of whether a space of 23 inches between moving machinery on the one side and a fixed object on the other provides sufficient room for the body of a man to pass through, and whether a space of 19 inches between such machinery and a fixed object affords ample space for a man's lower limbs, is one to be determined by experience, and whether that is the common and ordinary space provided as a passageway around such machinery is a question of fact to be determined by competent evidence. The record in this case discloses an absolute want of evidence bearing upon that question.

There is considerable force in the contention of the plaintiff in error that, even though the passageway was found to have been negligently constructed, the evidence falls short of establishing that the narrowness of such passageway was the proximate cause of Nelson's death. The mere fact that his body was found in the passageway does not raise the presumption that he came to his death through the negligence of the defendant. *Spears v. Chicago, B. & Q. R. Co.,* 43 Neb. 720. The evidence discloses that the floor in the passageway was covered with oil and slippery, a fact which would readily explain the falling of a person passing there. That fact, however, is not alleged as a ground of negligence. There is nothing in the evidence to indicate that the clothing of the deceased was caught in the machinery, and, even if there were, that fact might readily be explained by the inference that it was so caught when the deceased was examining the engine with a view of ascertaining whether it required oiling or not. Such an examination would necessitate the inspection of oil cups by means of which it was shown that the engine was oiled and in that case the narrowness of the passageway would not contribute to his proximity to the machinery.

An eye witness is not always necessary to establish the cause of death or injury, but the authorities cited by de-

fendant in error in support of that proposition are easily distinguishable from the case at bar. In *Union Stock Yards Co. v. Conoyer,* 41 Neb. 617, the deceased was foreman of an engine crew. His dead body was found between the rails of a track owned by his employer, under a train then being operated by the crew of which the deceased was foreman. The forward truck of the car upon which the deceased was supposed to be riding had become derailed because of an accumulation of cinders and other rubbish on the track, and the only reasonable inference was that the deceased was thrown from the car by the jolting caused from the derailment. The cases of *Lillstrom v. Northern P. R. Co.,* 53 Minn. 464, 55 N. W. 624; *Soeder v. St. Louis, I. M. & S. R. Co.,* 100 Mo. 673, and *Galvin v. Mayor,* 112 N. Y. 223, 19 N. E. 675, are parallel cases with the one just cited.

Upon a consideration of the entire evidence, we conclude that it does not sustain the verdict of the jury, and we recommend that the judgment of the district court be reversed and the cause remanded.

DUFFIE, C., concurs.

ALBERT, C.

I concur, but in yielding to the rule stated in the second headnote, merely acknowledge the binding force of precedent.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.

The following opinion on motion for rehearing was filed June 8, 1906. *Former opinion modified. Rehearing denied:*

DUFFIE, C.

In an exhaustive and instructive brief, filed by the defendant in error in support of his motion for a rehearing,

exceptions are taken to the following extract from the opinion of Mr. Commissioner Jackson, *ante*, p. 249:

"The existence of negligence in providing a place for the deceased to perform the labor required of him was a question of fact for the jury, but it must be established by competent evidence and according to certain fixed rules of liability. What is required of a master is that he use such machinery and appliances as are in common and general use. * * * Measured by the same rule, he would be required to furnish such facilities for the use and operation of the machinery by his employees as are in common and general use, and, where the lack of such machinery and appliances or facilities for the use of the same is relied upon as a cause of action, the burden of proving such failure is upon the party seeking to maintain the action. Does the proof in this case fall within that rule? We think not."

We are satisfied the above quotation does not contain a correct exposition of the law and that the opinion in that respect should be modified. The rule undoubtedly is that the master is not liable for furnishing dangerous machinery and appliances for the use of his servant, for all machinery is more or less dangerous. Employers are not insurers. They are liable for consequences, not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the *ordinary usage* of the business. *Weed v. Chicago, St. P., M. & O. R. Co.,* 5 Neb. (Unof.) 623. The rule that the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business, means that it is the test to disprove negligence, and not to prove it. The party charged with negligence disproves it by showing that the tools he employed were those in general use in the business, but the converse does not follow. The party charging negligence does not show it by showing that the machinery was not in common use. If it should be so held, the use of the newest and best machinery, if not yet generally adopted, could be adduced as negligence. Such evi-

dence should not generally, in the first instance, be admitted on behalf of the plaintiff, unless it tends to show that the method pursued was not only unusual, but more dangerous in itself than the ordinary one. *Cunningham v. Fort Pitt Bridge Works,* 197 Pa. St. 625. We think, on reexamination of the question, that this is the true rule, and that the opinion should be modified to that extent and, as thus modified, should be allowed to stand.

The other matters discussed in the brief for a rehearing have, we think, been fully met in the original opinion. We recommend that the opinion be modified as above set forth and the motion for a rehearing overruled.

By the Court: For the foregoing reasons, the opinion is modified as above set forth and the motion for a rehearing.

OVERRULED.