PETER D. THOMSEN, APPELLEE, V. BERNHARD J. JOBST, APPELLANT.

FILED MARCH 14, 1913.        No. 17,062.

1. **Master and Servant: DANGEROUS APPLIANCES: ASSUMPTION OF RISK.** The general rule is that an employee who, without objection on his part, works under dangerous conditions, with full knowledge of the danger incurred by him in so doing, will be held to have assumed the risk. But when the employer, who also knows the dangerous conditions, orders the employee to so perform the work notwithstanding his protest, and enforces the order with threats of discharge from employment, and himself stands by and directs the employee in doing the dangerous work, he will not afterwards be heard to say that the employee assumed the risk or was guilty of contributory negligence in obeying his orders.

2. ————: ————: NEGLIGENCE OF MASTER. The master is not necessarily negligent because he uses such machinery or appliances as are not in general use. But when he requires an implement to be used in a dangerous manner, under dangerous conditions and surroundings, and in a manner and under conditions more dangerous than the usual method, he may be guilty of negligence in so doing.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*Weaver & Giller, contra.*

SEDGWICK, J.

The plaintiff recovered a judgment in the district court for Douglas county for damages on account of injuries sustained while in the service of the defendant. The defendant has appealed.

There is little, if any, conflict in the testimony. The record discloses the following facts: The defendant, at the time the accident in question occurred, was a contractor and builder, carrying on his business in the city of Omaha. The plaintiff was a carpenter some 35 years of age, having had many years' experience in that line of work, and having been employed by the defendant from time to time. On the 17th day of May, 1909, plaintiff was working for the defendant, who was just completing a contract for the erection of a six-story warehouse for the Moline Plow Company. The job was completed, with the exception of a small amount of finishing in a show-room, situated in the sixth story of the building. The unfinished work required the nailing of some short pieces of molding around the top of a wooden post which was from 14 to 16 feet high. One Rasmus Nelson, who was defendant's foreman in charge of the construction work, told plaintiff to finish the top of the post. Plaintiff testified that he said to Nelson: "Ain't I going to have a scaffold for that?" Nelson said: "A man that can't work on that stepladder can't work on this building." Plaintiff thereupon placed a stepladder, which had been constructed on the premises by himself and a fellow workman, and with some tools and the pieces of molding, which had been sawed for the purpose of finishing the post, ascended to the top of the ladder, and, while standing in that position, commenced to nail the pieces of molding in place. Nelson stood by directing the work, and called his attention to the fact that one piece of the molding was not straight. Plaintiff attempted to fit the molding, and in so doing pushed the stepladder away with his feet. He caught hold of the molding, but

it was not strong enough to hold his weight, and he fell to the floor, and thus sustained the injuries of which he complains.

Plaintiff further testified that the use of a stepladder was dangerous, and one of his witnesses stated that it was so dangerous that a man ought not to use it at all. This witness admitted, however, that it was possible to do the work by the use of a stepladder, but that a man ought not to do it, if he wanted to be as careful of himself as he ought to be. The plaintiff admitted that he knew the use of the stepladder was dangerous, but stated that he used it because he did not want to lose his job. Defendant and his witnesses testified that it was customary to use a stepladder to nail short pieces of molding, like those in question, in place; that a scaffold was not required, and was never used for such a purpose, unless large amounts or long strips of molding were to be fastened in place. It was contended by the defendant upon the hearing that the foregoing facts were not sufficient to render defendant liable for the injuries sustained by the plaintiff, and that the district court erred in refusing to direct the jury to return a verdict in his favor.

A stepladder is generally considered to be one of that class of simple tools that any workman is supposed to understand. There are many cases holding that one who uses such simple tools cannot be heard to say that they were defective and dangerous, and that he was not aware of the defect. This is not the condition here. Plaintiff admits that he knew that the use of the stepladder under the conditions existing was dangerous, and, under ordinary circumstances, he would be held to have assumed the risk of injury in so using it. The defendant also admits that there is sufficient evidence in the case from which the jury might find that, under the circumstances, to use the stepladder as it was used was dangerous. The question that we must determine is: Can the defendant now rely upon the fact that plaintiff knew the danger that he incurred, and allege that he assumed the risk and was guilty of contributory negligence?

In *Lee v. Smart,* 45 Neb. 318, it is said: "Where the servant, in obedience to the requirements of his master, incurs the risk of machinery or appliances which, although dangerous, are not of such a character as to threaten immediate injury, or where it is reasonably probable that they may be safely used by extraordinary caution and skill, the master will be liable for a resulting accident." This conclusion appears to be derived from the language used in *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578. Several other opinions of this court are cited as upholding this doctrine. The reason of this exception from the general rule is not stated in the opinion in *Lee v. Smart, supra.* The court appears to rely upon the authorities cited as a sufficient support for the holding. In that case it was conceded that the plaintiff had full knowledge of the dangerous character of the implement used, and yet the defendant was not allowed to defeat his action on the ground that he had either assumed the risk or had been guilty of contributory negligence. It is difficult to perceive how these former cases can be distinguished from the case at bar. If the defendant is not allowed to assert assumption of risk or contributory negligence because he has promised to remedy the defect in the dangerous implement, and so induces the plaintiff to continue its use, why should he be allowed to rely upon such defenses when he has insisted that the defendant shall continue to use the dangerous implement, and has induced him to do so by a threat of this nature, and not only that, but has stood by and directed him in the dangerous use of the implement. See *Sapp v. Christie Bros.,* 79 Neb. 701, and note to *Lowe Mfg. Co. v. Payne,* 30 L. R. A. n. s. 442.

The defendant complains that evidence was received over his objection "that some other way of conducting the business than that which was used was usual and customary." In *Central Granaries Co. v. Ault,* 75 Neb. 249, 255, it was upon rehearing held that the master is not necessarily negligent because he uses such machinery and appliances as are not in common use. It is thought that

such a rule would tend to prevent the adoption of better and safer tools and appliances. The holding of the trial court is not inconsistent with *Central Granaries Co. v. Ault, supra.* The evidence admitted in the case at bar was not that the implement used was not in common use. It was to the effect that it was not customary to use a stepladder in work of this nature, under conditions there existing, and that the method used was more dangerous than the ordinary one, and this is clearly competent under the rule as stated in *Central Granaries Co. v. Ault, supra.*

The case is very close upon the facts presented, but we cannot say that the findings of the jury are so clearly wrong as to require a reversal. The judgment of the district court is

AFFIRMED.

BARNES, J., dissenting.

I am unable to concur in the opinion of the majority. The record in this case clearly shows that the plaintiff's injuries were caused by his own negligence in using a step-ladder, which the opinion concedes is an ordinary appliance, simple in its nature and construction; one which the testimony shows is customarily used in performing the particular work required of plaintiff, and on which he was engaged at the time his injuries occurred. The ladder was not defective or in any manner out of repair, and its use was entirely familiar to plaintiff, who was a skilled and experienced mechanic. If he had used the ladder with ordinary care, the work required of him could have been safely performed. In such a case the great weight of authority is that the master is not liable for the servant's injuries. *Vanderpool v. Partridge,* 79 Neb. 165; *Marsh v. Chickering,* 101 N. Y. 396; *Sweeney v. Berlin & Jones Envelope Co.,* 101 N. Y. 520; *Standard Oil Co. v. Helmick,* 148 Ind. 457; *Cahill v. Hilton,* 106 N. Y. 512; *Borden v. Daisy Roller Mill Co.,* 98 Wis. 407; *Sellers v. Chicago, B. & Q. R. Co.,* 87 Neb. 322. The majority opinion seems to be founded upon the rule announced in *Lee v. Smart,* 45

Neb. 318; *Sioux City & P. R. Co. v. Finlayson,* **16** Neb. 578, and *Sapp v. Christie Bros.,* 79 Neb. 701.

It should be observed that in *Lee v. Smart, supra,* it appears that the plaintiff was injured by reason of a defective wagon brake. He had called the master's attention to the defect, and had been told that he could safely use the wagon because the streets were level. Afterwards the defendant sent the plaintiff across the bridge spanning the Missouri river at Omaha, with this wagon heavily loaded with green lumber. The plaintiff had never driven over the bridge, and therefore was not aware of its condition. When he reached a point near the Iowa end of the bridge, and while attempting to hold the wagon from descending a sharp incline, his team got beyond his control, and, as a result, his injuries occurred. It was held that the question of plaintiff's contributory negligence was properly submitted to the jury, and a judgment in his favor was affirmed.

In *Sapp v. Christie Bros., supra,* defendants furnished the plaintiff with a light wagon for use in delivering goods and wares about the city of South Omaha. The wagon was not then, and never had been, provided with a brake. The neck-yoke which the plaintiff was required to use appeared to be somewhat old and season-cracked, and the "pole-eye" or leather attachment in which the end of the wagon pole is inserted was considerably worn and weakened. It appears, however, that the neck-yoke was repaired to some extent with baling wire, and the plaintiff was told that the defendants were rushed with business just then, but that, when they got up with their orders, they would have things fixed a little better. Plaintiff began work on Monday morning, when the foregoing conversation took place. He remained in his employment continuously until about noon of the following Thursday, when he attempted to deliver a load of feed to one Mc-Masters. The shed or stable to which the delivery was to be made stood adjoining an alley extending through a block of ground, and connecting two streets. It was a

public way, much used and traveled, but the surface of the ground was some 10 or 12 feet lower where the building stood than was that of the street whence the plaintiff approached it. Plaintiff sitting on the wagon, reined his team into the alley, and started down the incline. In some manner the end of the neck-yoke, to which the hame straps were attached, broke off while the wagon was descending, and that end fell down; immediately the leather "pole-eye" gave way, the pole dropped to the ground, struck an obstruction, bent and broke, and a piece of it flew upward and hit the plaintiff and knocked him from the seat, inflicting the injuries complained of. In that case a judgment for the plaintiff was affirmed. But it must be observed that the defects of which plaintiff complained were called to the attention of the defendants, and there was a promise to repair.

In *Sioux City & P. R. Co. v. Finlayson, supra*, the plaintiff was an engineer in the employ of the defendant company. He was furnished with a defective engine, and, by reason of the defects, an explosion occurred by which the plaintiff was severely injured. The defendant's attention had been directed to the condition of the engine, and there had been a promise to repair. The plaintiff had judgment, which was affirmed by the supreme court, and it was said: "If an employer knowingly furnishes an employee defective machinery with which to work, and which machinery, though dangerous, is not of such character that it may not be reasonably used by the use of care, skill, and diligence, and the employee, in obedience to the requirements of the employer, uses and operates such dangerous machinery carefully and skilfully, believing there is no immediate danger, and when it is reasonably probable it can be safely operated with such care, the employee does not assume the risk, and if he is injured by such machinery without fault or negligence on his part, the employer will be held liable for the damages resulting from such injury."

It should be observed that the foregoing cases are ex-

ceptions to the general rule; and it is apparent that the facts of this case are not the same as those upon which the rule in those cases is founded. As I view the case, in order to affirm the judgment of the district court, the majority have taken an additional step in the direction of declaring the existence, in this state, of an employer's liability law. Our legislature, so far, has not seen fit to abrogate the common-law rules by which the liability of the master to the servant have heretofore been determined. Until the adoption of what is known as an employer's liability law, I feel that we should adhere to the common-law rule, as declared by the great weight of authority in this country. I am therefore of opinion that the defendant's motion to direct a verdict in his favor should have been sustained.

For the foregoing reasons, I am of opinion that the judgment of the district court should be reversed.

FAWCETT, J., concurs in this dissent.