JAMES USHER, APPELLEE, V. AMERICAN SMELTING & REFIN-
ING COMPANY, APPELLANT.

FILED JANUARY 2, 1915. No. 17,896.

1. Master and Servant: INJURY TO SERVANT: DEFECTIVE MACHINERY: ASSUMPTION OF RISK. It is the settled rule in this state that where a servant, in obedience to the requirements of his master, uses and operates machinery which, though defective, is not of such dangerous character that it may not with reasonable probability be safely used by the exercise of reasonable skill and caution, he does not, as a matter of law, assume the risk of injury resulting. from the master's negligence.

2. Appeal: INSTRUCTIONS. An instruction containing an inaccurate explanation of terms correctly used therein will not require a reversal of the judgment, unless it appears that such inaccuracy probably caused the instruction to mislead the jury.

3. Instructions requested by defendant, and referred to in the opinion, held properly refused.

4. Master and Servant: INJURY TO SERVANT: SUFFICIENCY OF EVIDENCE. The evidence examined, and set out in the opinion, held sufficient to require the submission of the case to the jury and to sustain the verdict rendered thereon.

5. ———: ———: TRIAL: VERDICT: INCONSISTENCY. In an action for personal injuries by a servant against his master and its foreman jointly, where the principal negligence alleged is that of the master alone, a verdict in favor of the foreman and against the master will not be set aside on the ground that it is inconsistent, unless it is made to appear that plaintiff would not have received the injury for which he seeks to recover but for the negligence of the foreman.

· APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*James O'Hara, James C. Kinsler* and *Crofoot & Scott,* contra.

FAWCETT, J.

Action in the district court for Douglas county for personal injuries. Verdict and judgment in favor of defendant Wolfe and against defendant American Smelting & Refining Company, from which it appeals. Defendant Wolfe not being a party in this court, the singular number will be used in referring to the appealing defendant.

The second amended petition, upon which the case was tried, alleges substantially: That the defendant corporation was at the time complained of operating its smelting and refining plant in the city of Omaha, and, that defendant Wolfe was its foreman or superintendent; that plaintiff "was employed by the defendant corporation as a motorman, and was required by the defendants to operate a certain electrical motor car furnished and used by the defendant corporation for the purpose of moving ores and metals from one part to another of its said smelting plant;" that the car was defectively, dangerously and negligently constructed, and that it was an unsafe and dangerous place in which to perform the work required of plaintiff. It then describes the construction of the car, its defective condition from use, and the manner in which the electric current used to operate it passed from an overhead trolley wire through an uninsulated iron trolley down to and through the motor of the car, the manner in which the trolley was attached to the floor of the car, and the close proximity of the point where it was attached to the place where plaintiff was required to sit while operating the car; and alleges that the accident was caused by the defective condition of the car, and that his injuries resulted from its dangerous construction.

The defendant answered, admitting its corporate capacity, the business in which it was engaged, that defendant Wolfe was a foreman, and that plaintiff was employed in operating the motor car, all at the time of the accident; denies every other allegation in the petition; pleads, in detail, contributory negligence and assumption of risk, and alleges that the car and its appliances and equipment were reasonably safe and fit for the purpose for which they were designed and used, and were those generally and commonly used in the business in and about which plaintiff was employed. It then pleads an alleged settlement; but, as nothing on that account is claimed in its brief here, that portion of the answer need not be referred to. The reply denies and explains specifically the several acts of contributory negligence alleged in defendant's answer; alleges that prior to the date when he was injured he called the attention of defendant Wolfe and of the defendant corporation to the fact that the brake shoes were worn too thin to hold the car in going down grade, but defendants assured him that the car was safe, and that he could go on and use it with safety; that he relied upon the assurances that the car could be safely used, and continued to use it until he received the injuries complained of; that, when he was struck by the iron arm projecting from the trolley pole, he received an electrical shock of 250 volts pressure, which came through the uninsulated trolley pole and iron arm projecting therefrom.

As we view the case, the material assignments of error are: Insufficiency of the evidence; whether or not defendant assumed the risk; whether, under the pleadings and evidence, the defendants are so joined that the verdict against the appealing defendant is so inconsistent with the verdict in favor of its codefendant that it cannot be sustained; and the rulings upon the instructions.

We shall not attempt to set out the evidence *in extenso*, nor attempt to discuss the weight of the evidence offered by defendant in opposition to that offered by plaintiff, but will go into it only far enough to discover whether or not there was sufficient evidence to take the case to the jury.

If so, then that question must be considered settled. The evidence shows that in its smelting plant defendant was using two cars for moving ores and metals to and from different places in its large plant; that one car, which plaintiff says he used most of the time, had a cupola over it from which the trolley pole extended upward to the trolley wire. It will be seen at a glance that with this kind of a car the accident which happened to plaintiff could never have occurred. The car which plaintiff was using at the time of his injury was a metal car without, so far as the evidence shows, any wood in its construction. The floor of the car was metal, the seat, provided for the operator to use while operating the car, was metal. The trolley pole and the arm extending therefrom and the coil spring were all metal. There was no insulation anywhere about the car—not even a wooden seat for the operator to sit upon, or a wooden platform on which to rest his feet. The trolley pole, made of a piece of iron gas pipe, was fastened to the metal floor of the car upon a metal base about two feet high, which base was within the distance of about two feet from where the operator was required to sit. It seems to us that defendant was chargeable with notice of the fact that in putting such a car in use in its plant it was exposing its employee, who should be called upon to operate it, to serious danger whenever an accident might occur which would cause the disarrangement of the connection of the car with the overhead wire carrying the electric current. It also knew that the brake appliances required for the control of the car when running down the grade, which was so steep that there was a drop of 9 in 150 feet, were so defective that they would not control the car. When the attention of defendant's foreman was called to this condition of the car, he made no promise of repair, but told plaintiff that he could control the car by reversing the electric current. The foreman, while upon the witness-stand at the trial, still insisted that such was the fact. He testified that the car could be controlled by reversing the electric current, even if there had been no brakes at

97Neb.34

all upon it.   He also insisted, while upon the witness-stand, that the car was a perfectly safe appliance for the purpose for which it was being used, and the only fact claimed as negligence on the part of the plaintiff was that, after he had made his trip up the grade referred to, and deposited his load, he started back down the grade without reversing his trolley pole.   The foreman testified that, in running, the trolley pole should always slope upward to the rear so that it would "trail," but that, when plaintiff came down the grade at the time of the accident, his trolley pole was extending upward toward the front; that it was plaintiff's duty, when he had deposited his load, before returning to reverse the trolley and have it trail, going down, just as it had done going up.   He admits, however, on cross-examination that he had frequently seen the men going down the grade without reversing the trolley. Plaintiff testified that at one time during his employment the trolley could have been reversed at the top of the grade before returning, as there was plenty of room to get around the car and swing the trolley around, but that by reason of building some walls around the furnaces, and on account of a switch engine knocking out a bridge that at one time stood there, there was thereafter not room enough to get around and turn the trolley.   In this he is somewhat corroborated by one witness for the defendant, who testified that he had seen the trolley pole turned at the top of the incline, but that it might have been when the bridge was there.  That the car was not a safe appliance is shown by the fact that, notwithstanding plaintiff applied both the brakes and the current, as he testified, yet the car did run away and the accident did occur.

It is contended that there is no evidence that plaintiff received any electric current in his body, and hence he suffered no damage beyond the mere blow upon his cheek by the arm extending from the pole.   We think the evidence is ample to take the case to the jury on that point.   Plaintiff, who since the injury has taken a course in electricity, fitting himself for an electrical engineer, testifies unqualifiedly that he did receive the electric current in and

Usher v. American Smelting & Refining Co.

through his body by coming in contact with the trolley or the metal arm extending from it. At least one physician who examined him testified that, no other cause being apparent for the condition in which he found plaintiff, he must assume that his weakened condition was the result of having received the electric shock complained of. It is said that, if he had received this shock at the time his cheek came in contact with the metal arm, a burn would have been discernible; but the evidence shows that that is not always true. So that from any view-point it seems to us there was sufficient evidence to go to the jury on the question of defendant's negligence as to the character of the appliance, as to the place where plaintiff was required to work, and as to his having received the injury complained of, without fault on his part.

This brings us to the question of assumption of risk. It is contended that plaintiff knew the condition of the car both as to its imperfect brake shoes and the uninsulated character of all of its parts, and that by continuing in his employment without any promise of alteration or repairs he assumed the risk and cannot recover. The question of continuing without promise of repairs is not within the issues, nor claimed by plaintiff in his testimony. We think this point is controlled by *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578, and the cases decided subsequently thereto, based upon and approving that case. The *Finlayson* case was expressly followed in *Lee v. Smart,* 45 Neb. 318, *Dehning v. Detroit Bridge & Iron Works,* 46 Neb. 556, and *Sapp v. Christie Bros.,* 79 Neb. 701. In *Dehning v. Detroit Bridge & Iron Works, supra,* the second and third paragraphs of the syllabus are as follows: "(2) An employee assumes the risks arising from defective appliances used or to be used by him, or from the manner in which a business in which he is to take part is conducted, when such risks are known to him, or apparent and obvious to persons of his experience and understanding, if he voluntarily enters into the employment or continues in it without complaint or objection as to the hazards.

"(3) The above rule has been modified in this state as follows: 'Where the servant, in obedience to the requirements of his master, incurs the risk of machinery or appliances which, although dangerous, are not of such character that they may not be safely used by the exercise of reasonable skill and caution, he does not, as a matter of law, assume the risk of injury from accident resulting from the master's negligence.' *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578; *Lee v. Smart,* 45 Neb. 318."

While the three cases last above cited are based upon the rule announced in paragraph 5 of the syllabus in the *Finlayson* case, there is an inaccuracy in their statement of the rule there announced. In the *Finlayson* case the language used in the latter part of the syllabus is: "And the employee, in obedience to the requirements of the employer, uses and operates such dangerous machinery carefully and skilfully, believing there is no immediate danger, and when it is reasonably probable it can be safely operated with such care, the employee does not assume the risk." This statement is accurate and consistent. The inaccuracy in quoting the syllabus in the later cases consists in omitting the language that where the employee uses such dangerous machinery when it "is reasonably probable" it can be safely operated with such care. The inaccuracy pointed out does not, however, show any inclination on the part of the court to depart from the rule as announced in the *Finlayson* case. So that, from the decision in that case, in 1884, to *Sapp v. Christie Bros.,* in 1907, the modification to which attention is called in the *Dehning* case may be said to have been the unbroken rule in this state. We are not willing to recede from it now. As said in *Thomsen v. Jobst,* 93 Neb. 375: "It is difficult to perceive how these former cases can be distinguished from the case at bar. If the defendant is not allowed to assert assumption of risk or contributory negligence because he has promised to remedy the defect in the dangerous implement, and so induces the plaintiff to continue its use, why should he be allowed to rely upon such defenses when he has insisted that the plaintiff shall continue

to use the dangerous implement, and has induced him to do so by a threat of this nature, and not only that, but has stood by and directed him in the dangerous use of the implement." While in some of the former cases there was a promise of repair, in the case at bar there was an assurance of safety, viz., that the car could be controlled by reversing the electric current. Plaintiff relied upon this assurance and continued to use the car, as "directed" by the foreman. That he neither assumed the risk nor was guilty of contributory negligence in so doing is amply sustained by the case above cited, and by *Anderson v. Pitt Iron Mining Co.,* 103 Minn. 252; *Hunley v. Patterson & Co.,* 116 La. 736, 41 So. 54; *Galveston, H. & S. A. R. Co. v. Puente,* 30 Tex. Civ. App. 246, 70 S. W. 362; *Goldthorpe v. Clark-Nickerson Lumber Co.,* 31 Wash. 467; *Alabama Consolidated C. & I. Co. v. Heald,* 171 Ala. 263. We think the rule announced aptly fits the case at bar. According to plaintiff's testimony the car he was called upon to use was defective and in a sense dangerous, but he was assured by his employer that, notwithstanding its defective condition, it could be used with safety. He continued to use it safely for about another month, and then, while using it with reasonable skill and caution, he received the injury complained of. We therefore hold that in so doing he did not, as a matter of law, assume the risk of injury from the accident which resulted from the master's negligence.

Instruction No. 6, given by the court, which was complained of, is as follows: "The plaintiff, while in the employ of defendant company, assumed all the risks of injury that were ordinarily incident to the employment in which he was engaged; and he also assumed the risk incident to the use of defective appliances, provided such defects were open and obvious, and plaintiff knew, or by the exercise of reasonable care should have known and appreciated, the danger incident to the use of such defective appliances; and, if you believe from the evidence that his injuries, if any he received, grew out of a risk that was ordinarily incident to his employment, or were the result of defects which were open and obvious, and that plaintiff knew and

appreciated, or by the. exercise of reasonable care should have known and appreciated, the danger of using and operating the car, then your verdict should be for defendants. By the use of the expression 'risk ordinarily incident to the employment' and 'defects open and obvious' is meant a risk of injury that does not arise or grow out of any act of negligence on the part of defendants. The employee does not assume a risk created by any act of negligence of an employer."

While this explanation of the two terms quoted is not strictly accurate nor exactly within the rule announced in the *Finlayson* and other cases cited, it is not so inaccurate or erroneous, when taken in connection with the main part of the instruction, as to warrant us in holding that it was prejudicially erroneous.

Instruction No. 1, requested by defendant, was properly refused. It did not respond to either the pleadings or the evidence, but is based upon a case where there has been a promise to repair a defective appliance, which promise was not kept. Instruction No. 2 would have told the jury that the defendants were not required to furnish plaintiff the newest or safest motor car and machinery and appliances for the performance of the work in which he was engaged; that if the car and its appliances were reasonably safe and fit for the performance of the work, and if the plaintiff in the execution of his work "could have used such car and appliances and equipment with reasonable safety to himself by the exercise of ordinary care on his part, then the defendants are not liable." This instruction would completely nullify the rule laid down in the *Finlayson* case. It was properly refused. Instruction No. 3 contains the same vice as instruction No. 1, already referred to, and was properly refused. By instruction No. 4 the court was asked to tell the jury that, if they found the car and its appliances and equipment were reasonably safe for the work in which plaintiff was engaged, and were those commonly and generally used for such work and were not defective, then the plaintiff cannot recover. In announcing the rule which defendant was seeking to

invoke by this instruction, the courts never intended to hold that appliances in common and general use for certain work applied where such appliances were defective. The use of the very best known appliances will not protect a master if they are permitted to become so defective that they will no longer safely do the work for which they are being used. The evidence shows that there was no general system of inspection of the cars or other appliances used in this plant, but that they were only repaired when something went wrong with them. Even then it was not done in this case.

This brings us to the only remaining question: Whether, under the pleadings and evidence, the defendants are so joined that the verdict against the appealing defendant is so inconsistent with the verdict in favor of its codefendant that it cannot be permitted to stand, but that defendant is entitled to a like judgment as was entered in favor of its codefendant. This is not a case where the appealing defendant could not be guilty of the negligence charged unless its foreman was also guilty. If the pleadings and evidence showed that the negligence of the foreman alone was the proximate cause of the injury, and that plaintiff could not have been so injured but for the negligence of the foreman, there might be some grounds for the contention; as where a locomotive engine runs over a person and kills him, and the railroad company and engineer are proceeded against jointly for the damage, and the charge of negligence is that the engineer recklessly and negligently ran his engine over the deceased. There are authorities which hold that in such a case a verdict releasing the engineer would release the company, for the reason that the only act of negligence alleged against either was the negligent act of the engineer himself. But here the principal negligence alleged was that of the defendant company in furnishing a defective and unsafe appliance for use by its employee and an unsafe place for the employee to do the work. This was purely the negligence of the master and not the negligence of its foreman. Even if the foreman had told plaintiff to run the car, this would not have amounted

to more than a concurrent act of negligence on the part of the foreman, and the rule, we think, is well settled that an injury to one by the joint agency or cooperation of several persons, or done contemporaneously by them, even though without concert, renders them liable jointly and severally; and the mere fact that, in an action where several persons are proceeded against jointly for a wrong, one of the joint tort-feasors is released will not release the others, and the verdict against them will be sustained. 1 Cooley, Torts (3d ed.) sec. *166, p. 247; *Walton, Witten & Graham v. Miller's Adm'x,* 109 Va. 210; *Cleveland, C. C. & St. L. R. Co. v. Hilligoss,* 171 Ind. 417; *Cuddy v. Horn,* 46 Mich. 596; *Flaherty v. Minneapolis & St. L. R. Co.,* 39 Minn. 328; *Corey v. Havener,* 182 Mass. 250.

Upon consideration of the whole record, we are unable to discover prejudicial error. The judgment of the district court is therefore

AFFIRMED.

REESE, C. J., SEDGWICK and HAMER, JJ., not sitting.