JOHN HUTTON, APPELLEE, v. MISSOURI PACIFIC RAILWAY
COMPANY, APPELLANT.

FILED NOVEMBER 17, 1916.   No. 18835.

1. **Railroads:** INJURY TO TRESPASSERS: CONTRIBUTORY NEGLIGENCE.
Where the plaintiff appears from his own testimony to have gone
upon the side of the defendant's railroad track, where he lay
down upon the ballast with his head about a foot from the rail,
with his body alongside of the rail and next to it, and with his
hands crossed over his head, and was so lying awake looking
at the train as it approached from a distance some 1,500 feet away,
he will not be justified in remaining in his dangerous position until
the train arrived and he was struck by it and injured, although he
testified that he did not hear the noise of the train, or its bell or
whistle, and did not get out of the way because he did not hear
them.

2. ——: ——: ——. In such case, the cause of the injury
would seem to be the plaintiff's wilful negligence in lying down upon
the track and neglecting to get up and go away, and for which
the railroad company was in no degree liable.

3. ——: ——: ——. The plaintiff was a trespasser upon the
defendant's track. When he saw the train coming, he apparently
hesitated to make the exertion required to roll off the track, or to
get up and walk away. In any event, he would be guilty of con-
tributory negligence, unless it should be shown by a preponder-
ance of the evidence, which it is not, that the defendant's engineer
carelessly and negligently ran him down. *Held*, no recovery could
be had. *Hooker v. Wabash R. Co.*, 99 Neb. 13.

4. **Negligence:** EVIDENCE: PRESUMPTION. There is no presumption of
ordinary care, induced by the instinct of self-preservation, when
there is evidence of negligence on plaintiff's part not controverted.
*Johnston v. Delano, ante,* p. 192.

5. Evidence examined, and found to be insufficient to sustain the ver-
dict.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Reversed.*

*B. P. Waggener* and *J. A. C. Kennedy,* for appellant.

*Lambert, Shotwell & Shotwell* and *E. Simon, contra.*

HAMER, J.

The defendant appeals from the judgment of the district court for Douglas county.  This action was brought to recover damages for an injury suffered by the plaintiff. The plaintiff alleged he was lying on defendant's right of way, and close to the west rail of defendant's railroad track, his head and hands being in close proximity to the rail; that the track was unobstructed, and that he could have been easily seen; that, while the plaintiff was lying on the defendant's railroad track, a freight train came along and ran down upon him without warning, having failed to ring the bell or sound the whistle; that the train ran over the plaintiff and severely injured him, which could have been avoided by the exercise of ordinary care; that the train ran over the right hand of the plaintiff and severely cut and bruised the same so that it was necessary to amputate it at the wrist joint; that from the impact the plaintiff's right and left arms were broken between the shoulder and elbow; that the plaintiff was under the care of a doctor for more than two months, and was totally incapacitated from doing any work for a period of about four months; that said injuries have incapacitated him from doing any kind of work except small jobs like chores, and that the plaintiff has been rendered unable to earn a livelihood for himself, and his earning capacity has been permanently impaired; that prior to the injuries received by the plaintiff he was able to earn from $25 to $30 a month as a farm hand, and was 56 years old.

The defendant admitted that the plaintiff received an injury to his right hand, but alleged he was familiar with the dangers and risks necessarily incident to being upon defendant's right of way, and near defendant's railroad track, and that the plaintiff assumed all of the risks and dangers that were incident to his being there upon defendant's right of way at the time that he was injured; that there was no occasion for plaintiff being upon defendant's right of way; that plaintiff was guilty of gross negligence;

and that the defendant railroad company was wholly without negligence.

There was a verdict and judgment against the defendant for $1,500. Plaintiff contends that the place where he was lying on the defendants railway bed was at a point about 60 feet south of a public crossing; that while he was lying there defendant's servants should have seen him and should have controlled the train which ran down upon him and injured him; that he was lying about 60 or 70 feet south of a crossing, and that the defendant did not ring the bell nor sound the whistle. That the plaintiff had a right to obstruct the defendant's use of its railway track by lying down upon it or against it need not be conceded.

It is first objected by the defendant that the verdict is not sustained by sufficient evidence.

The plaintiff testified to his name, age, and occupation, and to living wherever his hat was off; that he was going from Nebraska City to Auburn; that it was a sunshiny day; that he got on the railroad track at Paul, 6 or 7 miles from Nebraska City; that he found the wagon road was muddy; that he was below Paul and about a mile above Julian; that this was about 60 feet south of the first road crossing north of Julian; that he was tired and lay down to rest on the west side of the track west of the west rail; that his feet were to the northwest and his head about a foot from the track with his hands crossed over his head; that he was lying on the ballast; that he lay down where he did because the rest of the places were wet and muddy; that when he got down to the crossing he lay down about 60 feet south of the crossing; that about 60 feet north of the crossing the track begins to curve; that he was lying next to the rail and on the inside or west side of the curve; that from the crossing he could see up the track for half a mile; that there was a bank on the east side of the track where he was lying, and the track was built up; that there was no bell or whistle; that he did not hear any noise of the train coming; that the cowcatcher struck his right hand and shoulders and broke his hand; that he lost his

little finger and two other fingers next to the forefinger; that the engineer hollered at him; that when he raised up the engine struck him again and knocked him off the side of the track onto the dump; that the tail end of the train was about a quarter of a mile down the track when it stopped; that the train was going about 35 or 40 miles an hour; that they stopped and backed up and took the plaintiff to Julian to a doctor; that it was between 2 and 3 o'clock in the afternoon when he was struck, and was sunshiny; that they took him to Auburn that night to Anderson's hotel, where they got a doctor, who took his hand off at the wrist; that his shoulders and arms were both broken; that the fingers of his left hand are stiff, and he can only raise his arm up a short distance; that he stayed about a week and a half at Auburn, and then went to Nebraska City, where he stayed more than a month; that he was then taken to the poorhouse; that before he was injured he had the full use of both arms and was able to work right along, and got $2 a day in the rock quarry, and $35 a month on the farm; that he has not yet done a day's work since he was injured; that before he was injured his fingers were in good condition and his health was all right; that now both his arms pain him and his hand hurts him very much; that he went to the ground with Mr. Simon and Mr. Shotwell, and took the same position on the railroad track that he had when he was injured; that when he was struck by the train he fell over on the side of the road on the dump; that from where he got hurt he could see up the track clear above the whistling post 1,500 feet; that from the whistling post he could see up the track for a mile; that from where he was lying he could see up beyond the whistling post; that there were no trees or anything else close to the track to obscure the view; that he was dressed at that time as he was when he testified, except that he had a black coat on then; that the ballast was white rock; that it was an extra freight, and he could not tell how many cars; that he did not hear any sound of any character before the train

struck him; that there was a wagon road crossing the track near where he was lying.

On cross-examination he testified that he was awake; that his feet were to the northwest and his head to the southeast; that the train came from the north; that he could see it for 1,500 feet; that the reason he did not get up out of the way was that he did not hear it; that they did not make any whistling or noise, and there was no bell; that he did not hear the train or the bell or whistle; that there was nothing to obstruct his view for 1,500 feet to the north; that in the direction from which the train came the engineer and fireman could not help seeing him; that he could see the engine for 1,500 feet, and that he was awake. The fact that the plaintiff testified that he saw the train coming when it was 1,500 feet away, and that he remained lying along side of the rail until the engine reached him makes this a case for careful consideration.

He further testified that when he went onto the track at Paul he had not bought a ticket, and did not say anything to the agent, and the agent did not say anything to him; that he went onto the right of way without the permission of the railroad company, although he knew that the trains ran there during the daytime; that he saw the curve of the track start about 60 or 70 feet north of the wagon road; that the cattle guards were between him and the engine coming from the north; that the ground slopes from the end of the ties down toward the ditch; that exhibit 1 is a fairly correct picture of the cattle guards that were north of him when he got hurt; that he was south from the south cattle guard; that when the engine came along and hit him it knocked him a little way, and then came along and hit him again and rolled him over on the side of the dump; that when it first hit him it knocked him about 8 or 9 feet; that he was lying about 60 feet south of the south cattle guard; that the road was muddy; that he could see after it knocked him off that the train went between a quarter and half a mile before

it stopped; that it was a bright, clear day; that he had a cane or a stick, and it was resting on the west rail, and his head and hands were on the stick; that he intended to get out of the way *before the train came.*

Miss Vera L. Wilson testified that she went out with Mr. Shotwell, Mr. Simon, Mr. Hutton, and Mr. Taylor, her brother-in-law; she went to examine the ground and the track; that it was a clear, sunshiny day about 2 o'clock in the afternoon; that the general direction of the road at that point was north and south; that there was a little bend in the track north of the crossing; that Mr. Simon, Mr. Shotwell, Mr. Taylor, and the witness went up as far north as the whistling post; that when they were at the whistling post Mr. Hutton was lying in the position he says he was in when the train hit him; that he was just south of the crossing on the west side of the track, which would be on the inside of the curve; that he was in that position when the witness and the others were up at the whistling post; that when she was up there she looked down the track to where Mr. Hutton was then lying; that she could see an object on the track, but could not say whether it was a man or not; that when she got to the crossing she looked up and could see clear up to a point which she imagined was over a mile beyond the whistling post; that she stood where Mr. Hutton was lying and could see clear to the curve, beyond the whistling post; that there was a curve north of the whistling post a mile or a mile and a half; that there was a curve to the south of the whistling post; that if she had been lying where Mr. Hutton said he was lying, the wings of the cattle guard would be between her and the engine; that Hutton was lying on the track south of the cattle guards right close to the track and next to the ties; that the railroad was ballasted with gravel or cinders.

Dr. S. J. Grudupe testified that he was a practicing physician living at Julian, Nebraska; that he was called to the depot about a year ago and saw the plaintiff; that

he looked the man over and saw no effects of alcohol; that he seemed shocked and dazed.

On being recalled the plaintiff testified that the night before he was injured he stayed at the depot at Nebraska City, and did not have anything to drink on the day of the injury.

Edward Simon testified that he lived in Omaha and was a practicing lawyer; that, after the accident, Mr. Shotwell, Miss Wilson, Mr. Taylor, and Mr. Hutton went with the witness to investigate the place where Hutton was hurt; that they went to the road crossing near where Hutton was hurt, and got there about 2:30 p. m.; that they had Mr. Hutton take the position he was in at the time he was hurt; that from the whistling post the witness looked down to the place where Hutton was then lying; that he could see an object lying there, but could not distinguish what it was; that he then measured the distance from the whistling post to the crossing by stepping it, and found it to be about 500 paces of 3 feet each; that the general direction was north and south; that from where Hutton lay you could see the track for about a mile; that there was another crossing about half a mile from the crossing where they stood; that there was nothing to obstruct the view from the whistling post; that Hutton was on the inside of the curve, which was on the right going south; that the photograph, exhibit 1, truly represents the cattle guards. The plaintiff offered in evidence exhibit 1, which shows the track at the cattle guard. Simon further testified that the middle of the curve would be about half way between the whistling post and the cross road; that when the witness made his observation he knew that Mr. Hutton was lying on the track.

When the witness had finished introducing his evidence counsel for the defendant moved the court for a directed verdict for the defendant. This motion was overruled. The grounds of the motion were that the evidence failed to show any negligence on the part of the defendant; that the plaintiff was a trespasser on the defendant's right

of way; that the evidence failed to show any knowledge on the part of the defendant company of the presence of the plaintiff on its right of way; that the evidence showed the plaintiff was fully familiar with the fact that he was lying down on the right of way of defendant company's railway, and that if he did not remove himself from the position he would be hurt; that the evidence showed that the plaintiff assumed the risk of being on the defendant company's right of way and in close proximity to defendant company's railroad track.

On behalf of the defendant, C. M. Hysell testified that he was the engineer operating the train; that he was about 200 feet from Hutton when he first saw him; that the instant he saw him he put on the emergency to get the air on the emergency brake and make a good stop; that the train was about 1,200 to 1,300 feet in making the stop; that there were 38 freight cars, an engine, and a caboose on the train; that the tonnage back of the engine was 10,000 tons; that the train was running south on a down grade at about 30 miles an hour; that the witness was sitting on his seat in the engine in the ordinary lookout to see that there was nothing on the track, any obstruction or anything; that Hutton was lying right next to the cattle guard on the right-hand side of the track; that he was on the inside or west side of the curve and close to the cattle guard; that his head was toward the cattle guard, his shoulders upon the ties, and his feet hanging down over the ballast; that there was one cattle guard south of the roadway and one on the east side; that there are crossbars on each side of the tracks in connection with the cattle guards; that outside of the cattle guards there is a fence and post and the wing of the fences; that exhibit 1 is a fair reproduction of the curve of the track; that from the whistling post to the crossing is about 1,300 feet; that the whistling posts along the Missouri Pacific Railway are located a quarter of a mile from the crossing, which would be 1,320 feet.

On cross-examination this witness testified that the crossing in question is about one mile north of Julian; that there is another crossing a half a mile north of that; that whistle signals were given as the train approached the crossing; that there were two long and two short whistles; that they were given at the whistling post a quarter of a mile north of the roadway; that the whistle was the only signal given; that the emergency air brake was working, and the witness slapped it on immediately; that the train was then about 200 feet north of the road; that the day was cloudy; that the eyesight of the witness was good at that time; that the distance he can see ahead depends upon where he is; that his position was on the right-hand side of the engine; that this was 100-class engine, engine 30; that from where the witness sat in the engine to the ground was about 8 feet; that immediately in front of the witness was an opening so that he could look straight ahead, and that there was nothing to obstruct his view; that he could see the track from that crossing down to the other crossing; that he was looking down the track, but did not see Hutton; that he could stop the train in about 1,200 to 1,300 feet.

On redirect examination the witness testified that the train could not have been stopped on that grade going at 30 miles an hour with 10,000 tons back of the engine in a distance of 800 feet; that the cattle guard interposed between the vision of the witness and where Hutton was lying, and that he could not have seen him earlier than he did; that this was because there were two cattle guards, one on each side of the roadway; that Hutton was lying by the south cattle guard, and to the south of the roadway; that the north cattle guard prevented the witness from seeing him until he got within 200 feet of him.

F. B. Dejarnette testified that he was the conductor in charge of the train that struck Hutton; that he went back to where Hutton was lying; that Hutton was then about 10 or 15 feet south of the line of fence, and about 10 or 15 feet from the main line of the track, lying south

and west from the cattle guards; that the tonnage of the train was 10,000 tons; that the engine operated the very best it could operate.

C. H. Bresler testified on behalf of the defendant that he was one of the brakemen on the train that hit Mr. Hutton; that he noticed the train coming to a quick stop; that the air and brakes worked well and stopped the train immediately; that the witness did not think that the train could be stopped within less than about 800 feet.

W. A. Loomis testified that he was the fireman of the train; that he observed the air brake and it worked well; that he did not think that a train with 10,000 tons back of the engine on that grade could have been stopped in a shorter space than approximately 1,300 feet.

C. M. Hysell was recalled for further cross-examination, and testified that he could not see the cattle guards at the crossing where Hutton was injured.

At the conclusion of the evidence the defendant renewed its motion for a directed verdict. The motion was overruled.

The only duty of a railroad company to a trespasser who enters upon its right of way without its knowledge or consent, not within a highway crossing, and uses its road bed and track as a sleeping place, is not wantonly, wilfully, or carelessly and negligently to injure him.

In *Hooker v. Wabash R. Co.*, 99 Neb. 13, it was said in the body of the opinion: "The rule of law is that, where a man walking upon the track is a trespasser, and is negligent in failing to keep a lookout for approaching trains up to the time of the accident, and there is nothing to prevent him from getting out of the place of danger by stepping off of the railroad track, the defendant company is not liable, unless its engineer is guilty of a want of reasonable care under all the circumstances." We think this view is sustained by *Shults v. Chicago, B. & Q. R. Co.*, 83 Neb. 272.

In *Langenfeld v. Union P. R. Co.*, 85 Neb. 527, where the plaintiff, who was walking in the yard of the defendant

company, and was a helper in a necessary part of its business, and therefore was rightfully walking in the path between two main tracks, met a train coming on one of the tracks, and, with a view of avoiding danger, stepped over to the other track on which there was a standing train of box cars, and put his shoulder in between the ends of two of the cars, and immediately the standing train was moved by a switch engine, and the ends of the cars, coming together because the bumpers were gone and the cars were fastened together with chains, pinched plaintiff's shoulder and injured the same, it was declared by this court that there was no liability of the defendant because the plaintiff had space in which he could have continued to walk (5 feet), and he could have crossed the track on which the train was coming in, and ahead of the train, and could so have avoided danger, and the defendant company was under no obligation to keep the bumpers on the box cars in anticipation that the plaintiff would attempt to use the cars as he did. This court then laid down the doctrine, as stated in the syllabus: "In order to constitute actionable negligence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure." It was also said: "When plaintiff stepped out of the beaten way between the cars, the only duty owing to him by the defendant was to exercise proper and reasonable care not to injure him, as soon as it acquired knowledge of his dangerous position." The defendant had no knowledge of his danger and no reason to anticipate that a stranger to the operation of the train would, while the cars were in its private yards, place himself in such a position.

This view is in entire harmony with the principle laid down in *Chicago, B. & Q. R. Co. v. Wymore*, 40 Neb. 645: "A railroad company does not discharge its whole duty by refraining from wantonly injuring a trespasser upon its tracks after observing his position. It is bound

in all cases to exercise reasonable care to avoid injuring all persons who are known to be, or who may be reasonably expected to be, upon its right of way." The opinion is sustained by *Chicago, B. & Q. R. Co. v. Wilgus,* 40 Neb. 660, and other cases cited.

The engineer of the train testified that the train ran at the rate of 30 miles an hour. We are unable to say that the evidence shows that the speed of the train was excessive. The engineer fixes his distance from the plaintiff at the time he first saw him at about 200 feet. No one disputes the testimony of the engineer concerning the distance that the train was from the plaintiff when the engineer first saw him. The moment the engineer saw the plaintiff he applied the emergency brakes. He did what he could to stop the train within the shortest period of time and in the least space. The plaintiff's witnesses, when they were as far away as the whistling post, 500 paces, could not distinguish that Hutton, then lying at the place where he claims to have been injured, was a human being. As they went from the point toward the crossing they had to proceed to a point about 800 feet from Mr. Hutton, to be able to make out that the object in sight was a human being, although then knowing that Hutton was then lying there. If witnesses on the ground were unable to ascertain that Hutton then lying on the ground was really a human being, there could have been no duty upon the part of the engineer to perform an impossible task. The train that was coming up to Hutton was a long freight train. It had lots of rumble and roar. It made a noise that could be heard for a long distance, but Hutton was lying still on the ground. According to his conduct, he was unwilling to be disturbed. There does not appear to be any virtue which in any way tends to lead to the conclusion that greater care upon the part of the engineer would have saved the plaintiff from injury. We are unable to conceive of a man with ordinary intelligence and ordinary sobriety lying down and inviting the train to

come and run over him. No one could have acted in a more lawless manner than he.

There is no evidence that the engineer saw the plaintiff in time to have stopped the train before the plaintiff was reached. The jurors found a verdict for the plaintiff. It was clearly within their right to do this if there had been any evidence upon which to base their verdict, but all the evidence tends to show that the plaintiff was so sheltered behind the wings of the cattle guards as to be invisible to the engineer until he was within 200 feet of him. He was therefore justifiable in running the train as he did. The plaintiff was not helpless. He was in duty bound to look for any train that might come along. It was his duty to look so that he might protect himself from the train that was coming. He testified that he did look and that he saw the train. The engineer testified that he was keeping a lookout, but that he did not see the plaintiff until he was within 200 feet of him, and that that was too close to enable him to stop his train. To let the plaintiff recover is to let him do so in spite of his negligence and in spite of his refusal and neglect to get up or to roll over out of the way.

The duties of the plaintiff and the engineer were, to a certain extent, reciprocal, but to let the verdict stand puts all the burden upon the defendant and requires the engineer to accomplish an impossible feat. He could not see through the wings of the cattle guards, and there is no good reason why he should have been expected to do so.

On cross-examination the plaintiff admitted that he was lying on the track when he saw the train coming at a distance of about 1,500 feet. Apparently he hesitated to make the exertion required to roll off the track, or to get up and walk away, as he might readily have done. Unless the defendant's engineer carelessly ran the plaintiff down, of which there is no evidence, no recovery should be had. It cannot be said that the defendant's engineer had an opportunity for actual knowledge concerning the position of the plaintiff and his condition. The case is one where

Hutton v. Missouri P. R. Co.

the plaintiff enters upon the defendant's close and lies down upon its track because it suits him to do so, and then he sees the train coming and refuses to get up or to roll out of the way, and yet insists that the railroad company shall bear the burden of his self-imposed injury.

We refer to the following additional authorities: *Chesley v. Rocheford & Gould,* 4 Neb. (Unof.) 768; *Burtis v. New York C. & H. R. R. Co.,* 143 N. Y. Supp. 145; *Newell v. Detroit, G. H. & M. R. Co.,* 187 Mich. 697.

In *Krummack v. Missouri P. R. Co.,* 98 Neb. 773, this court held: "Where the evidence shows that the switching-yards of a railway are close to a large public school building and playground, that young children have long been in the habit of playing on or near the cars and tracks, ordinary care demands that in switching cars due regard should be paid to these conditions, and a failure to inclose the tracks and a neglect on the part of those engaged in switching to observe whether children are on the cars or tracks when a train is being backed in, from the lack of which precautions a trespassing child is injured, may constitute actionable negligence." It will be noted that this is one of those cases where the supposed trespasser has not arrived at years of discretion. Besides, in this case the injured man was behind the wing of the cattle guard, and therefore could not have been seen. The doctrine laid down in this case cannot well be held to apply to the instant case, because young children are not trespassers of mature age, and they should not be held responsible during their immaturity and lack of judgment.

The motion of the defendant for a directed verdict should have been sustained, because the evidence is insufficient to sustain the plaintiff's case. The judgment of the district court is reversed and the case remanded.

REVERSED.

SEDGWICK, J., not sitting.

ROSE, J. I concur in the conclusion.

LETTON, J.   The Plaintiff, a man of full age and apparently of sound mind, was a trespasser upon the right of way.   He lay down to rest, close to the railroad track, was struck by a train and severely injured.   He testifies that he did not see nor hear the train coming, but admits he may have been in a doze when he was struck.   The train was running at the usual and ordinary rate of speed.

Under the admitted facts, he was guilty of the grossest negligence.   The burden is upon him to establish that the engineer in the exercise of his duty to keep a lookout on the track could have seen him in time to avoid striking him.   Unless this has been proved, there is no cause of action.   The evidence does not establish this fact, and there can be no recovery.   I concur in the conclusion.