LINCOLN STREET RAILWAY COMPANY v. CHARLES R. COX.

FILED JUNE 3, 1896.  No. 6570.

1. **Master and Servant: DEFECTIVE APPLIANCES: DUTY OF MASTER.** A master does not insure his servants against defective appliances. The rule is that he is bound to use such care as the circumstances reasonably demand to see that the appliances furnished are reasonably safe for use and that they are afterwards maintained in such reasonably safe condition.

2. ———: ———: NOTICE. He is not liable for defects of which he has no notice unless the exercise of ordinary care under all the circumstances would have resulted in notice.

3. Negligence: PLEADING: EVIDENCE. In an action by a servant against his master for personal injuries the jury cannot be permitted to infer negligence from the mere fact that an accident happened. A want of ordinary care must be pleaded and proved.

4. Master and Servant: NEGLIGENCE: INSTRUCTIONS. Instructions in such case which make the case turn upon the fact of a defect in the appliances instead of upon negligence in furnishing and maintaining such appliances are erroneous.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

*William G. Clark*, for plaintiff in error.

*Lamb, Adams & Scott, contra.*

References: *Kraatz v. Brush Electric Light Co.*, 82 Mich., 457; *United States Illuminating Co. v. Grant*, 55 Hun [N. Y.], 222; *United States Electric R. Co. v. Shelton*, 14 S. W. Rep. [Tenn.], 863; *Perry v. Marsh*, 25 Ala., 659; *Grizzle v. Frost*, 3 Fost. & Fin. [Eng.], 622; *Union Pacific R. Co. v. Fort*, 17 Wall. [U. S.], 553; 2 Thompson, Negligence, p. 975; *Lincoln Rapid Transit Co. v. Nichols*, 37 Neb., 333; *Filer v. New York C. R. Co.*, 49 N. Y., 47.

IRVINE, C.

Cox, a minor, by his next friend, brought this action against the Lincoln Street Railway Company to recover for personal injuries sustained by him while in the employ of the railway company. He recovered a judgment for $800. Cox was employed in driving a team which drew what is called a "tower wagon," being a wagon bearing a scaffold used for the purpose of repairing the trolley wires by means of which the defendant's electric railway was operated. At a point near the intersection of Seventeenth and South streets a fire-alarm wire passed above the trolley wire, crossing it at an angle of forty-five degrees and placed about fourteen inches above the trol-

ley wire at the point of the crossing. The evidence tends
to show that the fire-alarm wire was so located before the
trolley wire was erected. Three co-employes of Cox were
engaged in repairing the wires. In some manner, while
their work was progressing, the fire-alarm wire fell across
the trolley wire and thence to the ground, where it came
in contact with Cox, injuring him by burning and electric
shock. The negligence alleged in the petition was in the
construction of the trolley wire in dangerous proximity
to the fire-alarm wire, and in permitting them to come in
contact. On the latter branch of the case the court in-
structed the jury that if the contact was brought about
by the negligence of any of Cox's companions in the work,
there could be no recovery, as these men were his fellow-
servants. This feature was therefore eliminated from
the case, and the verdict must have been based upon the
construction and maintenance of the trolley wire danger-
ously near the fire-alarm wire. On this branch of the
case the court gave the following instructions:

"8. If you find from the evidence that at the point
where the alleged injury occurred there had been erected
across the street a fire-alarm wire, and that after said fire-
alarm wire had been erected a trolley wire was erected
along said street at said point, and thereafter the defend-
ant took possession of said trolley wire, and when the
defendant so took possession of said trolley wire it was in
such close proximity to said alarm wire as that the said
two wires were liable to come or be thrown together or in
contact with each other, and while said defendant was in
possession of said trolley wire it was charged with elec-
tricity, and the defendant so used and operated the same
so charged, and negligently or carelessly permitted or
caused the said two wires thus charged with electricity
to come in contact with each other, and thereby one of
them was burned in two and fell to the ground and with-
out the fault of plaintiff struck him and injured him, then
the defendant would be liable for such injury."

"10. It is the duty of a party or corporation maintain-

ing and operating an electric railway to see that its trolley wire is reasonably safe and sound, and of sufficient distance from other electric wires as that the use to which said party or corporation puts it will not endanger the lives of persons generally or the servants of the party or corporation so operating it.

"11. If you find from the evidence that at or near the point where the accident occurred the fire-alarm wire had been erected before the trolley wire and the trolley wire was, when erected, placed in such close proximity to the fire-alarm wire as to be dangerous, and you also find that at the time of the injury to plaintiff the employes of defendant were at work about the wire near said point, and were doing work in the line of their duty as such employes and were doing such work in the only way it could be done, and by doing said work said wires were brought or came in contact with each other and without fault or negligence of the plaintiff caused the injury complained of, then defendant would be liable."

In giving these instructions, especially as they were not accompanied by any instruction stating to the jury the rule of care devolving upon the defendant, we think the court erred. The effect of these instructions upon the minds of the jury must have been to make their verdict depend upon the fact of danger in the manner in which the wires were constructed and maintained, and not upon negligence on the part of the railway company in so maintaining and constructing them. The accident undoubtedly happened, and the jury found that it was not due to the negligence of the men at work about the wires. The fact of the accident therefore established the fact of danger, and the instructions were equivalent to telling the jury that a verdict might be based upon the fact of the injury, without proof of negligence. This was erroneous. (*Missouri P. R. Co. v. Lewis*, 24 Neb., 848; *Chicago, B. & Q. R. Co. v. Howard*, 45 Neb., 570.) We recognize the fact that there appears in the instructions we have quoted some language seeming to qualify this statement.

For instance, in the eighth instruction it seems to have been stated that there must be a finding that the defendant negligently and carelessly permitted or caused the wires to come in contact; but these adverbs refer to the conduct of the company or its servants in handling the wires, and are not used in connection with those parts of the instruction which relate to the erection and maintenance of the wires. Moreover, negligence and due care having been nowhere defined in the charge, the jury was left without means of properly applying the adverbs. Again, in the tenth instruction the duty of the company was stated, "to see that its trolley wire is reasonably safe and sound, and of sufficient distance from other wires as that * * * it will not endanger the lives of persons." To a legal mind the word "reasonably" might perhaps imply the element of care; but we must deal with the instructions in the sense in which they would be understood by the jury. Notwithstanding these qualifying words, we think it quite clear, as already stated, that the instructions made the case turn upon the fact of danger and not the fact of negligence. A master does not insure his servants against defective appliances. He is not chargeable in all events because the appliances furnished his employes are defective. He is liable only when he has been negligent in the matter. The rule is that as to his servants he is bound to use such care as the circumstances reasonably demand, to see that the appliances furnished are reasonably safe for use, and that they are afterwards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice, unless the exercise of ordinary care would have resulted in notice. *Sioux City & P. R. Co. v. Finlayson,* 16 Neb., 578, *Missouri P. R. Co. v. Lewis, supra, Union P. R. Co. v. Broderick,* 30 Neb., 735, all recognize this rule. In *Hammond v. Johnson,* 38 Neb., 244, it is said that it is the duty of a master to furnish for the use of his servant in the course of his employment proper and safe appliances and instruments for the performance of the services required;

but this language is used in such a connection that no intimation could reasonably be drawn from it that the duty is absolute. On the contrary, it clearly appears that it is only for negligence in failing to perform the duty that a liability exists. A peculiar rule is stated in *Leigh v. Omaha Street R. Co.*, 36 Neb., 131. This is as follows: "It is a fundamental rule of law that the master is to furnish his servants with such appliances for his work as are suitable and may be used with safety, and if the servant is injured by reason of defective appliances placed in his hands by the master, or his agent, the master will be liable, unless he can clearly show that he has used due care in the selection of the same." It would seem from this that the plaintiff's case would be made out on proving that he was injured through a defect in the machinery, and that the burden would then devolve upon the master not only to show by a preponderance of the evidence, but to "clearly show" that he had used due care. We do not think that it was the intention of the writer of the opinion to convey such an impression; because every one of the ten cases he cites in support of the rule is to the effect that the master is not absolutely responsible for defects, but liable only where he has failed to exercise due care in the premises, and that the plaintiff must plead and prove such want of care.

REVERSED AND REMANDED.