HARVEY E. LINDLEY, APPELLEE, V. WABASH RAILWAY COMPANY, APPELLANT.

FILED JULY 11, 1930. No. 27122.

*Homer Hall* and *R. B. Hasselquist,* for appellant.

*Gray, Brumbaugh & McNiel* and *Miles Elliott, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD and DAY, JJ., and CARTER and CHASE, District Judges.

CHASE, District Judge.

This is an action brought by Harvey E. Lindley against the Wabash Railway Company to recover damages for personal injuries alleged to have resulted from the negligence of the defendant. The action was brought under the federal statute known as the employers' liability act. The case was tried to a jury, terminating in a verdict for the plaintiff,

and from the judgment upon the verdict the defendant presents the record to this court for review.

The defendant is an interstate railway company and was at the times herein mentioned engaged in the business of the common carriage of passengers and freight over its railway system.

The plaintiff, on and prior to December 13, 1926, had been and was employed by the defendant as a brakeman. Early in the morning of December 13, 1926, defendant's local freight train No. 71 left the town of Stanberry, Missouri, for its regular run to Council Bluffs, Iowa; those two points being the southern and northern terminals of its local freight division. The plaintiff on that day was acting as head brakeman on this train. As the train approached the village of Clyde, Missouri, an intermediate station on the division, it slackened its speed until at the time the engine arrived at the station platform it was traveling about ten or twelve miles an hour. The plaintiff was riding on the engine, and as the train came to the depot platform the plaintiff undertook to alight from the steps of the engine upon the platform, and in so doing fell and, in some way, was precipitated under the train, his feet or legs becoming entangled in the trucks of the tank. He was dragged approximately 100 feet before the train came to a stop. While he was thus entangled the wheels of the train passed over a portion of his body, mangling his left leg in such a manner that amputation near the hip resulted. This accident occurred early in the morning following a night of zero weather and the platform was covered with a heavy coating of white frost.

The case seems to have been tried below by the plaintiff upon the theory that the platform at this particular point where he alighted was defective, in that the sills supporting the same had become decayed to such an extent that when the weight of the plaintiff came in contact with the platform it sagged down several inches, thus making an abrupt incline toward the wheels of the train, causing him to slip, fall, and slide thereunder.

The theory of the defendant at the trial was that the

platform was covered with heavy frost, and the careless manner in which the plaintiff alighted from the train caused him to slip as he stepped upon the frosty platform, and his injuries resulted because of this dangerous natural condition over which the defendant had no control.

The record is quite voluminous and presents 42 separate assignments of error.

The defendant charges the lower court with error for refusing to order the case removed from the state to the federal court. This contention is entirely frivolous, since it is disclosed by the record that the federal court upon its own motion ordered the case remanded to the state court and dissolved an injunction in which the defendant sought to restrain the plaintiff from proceeding in the state court with the prosecution of the case. From this order of the federal court dissolving the injunction, the defendant prosecuted an appeal to the circuit court of appeals, which court affirmed the dissolution of the injunction by the lower court. The defendant made no further effort to have the case reviewed by the appellate court and the decision thereof became final.

Both at the close of plaintiff's testimony and at the end of the trial, the defendant moved the court to instruct a verdict in its favor because the testimony did not show the case to be one coming within the provisions of the federal employers' liability act; and error is assigned upon the overruling of this motion.

Two separate elements are involved in this contention. If the train was not engaged in interstate commerce, then it becomes immaterial how the injury occurred. If, however, the train was engaged in interstate commerce, then the question arises: Does the statute require that the injury must occur while the employee is handling interstate freight? From the undisputed facts in the record, it appears that this was a regular local freight train of the defendant company operating on its regular division, the southern terminal of which was Stanberry, Missouri, and the northern terminal Council Bluffs, Iowa. A freight train operating between those two points on its regular run is

an instrument of interstate commerce and at the time engaged therein as contemplated by the statute. *Chicago, R. I. & P. R. Co. v. Wright,* 239 U. S. 548; *Bower v. Chicago & N. W. R. Co.,* 96 Neb. 419. Therefore, the contention that the statute does not apply because the plaintiff received his injuries while he was engaged in unloading of purely intrastate freight is untenable. The record discloses that, if the plaintiff was performing any immediate service whatever for the defendant at the time he received his injuries, it was that of assisting in the unloading of two parcels of intrastate freight. The claim of the defendant is that the particular service which the injured employee was performing at the time of his injury under the statute must be the controlling fact in determining the applicability of the statute. The record shows without dispute that the plaintiff alighted from the train at the station where the accident occurred for the purpose of assisting in unloading two boxes of freight initiating at St. Louis, Missouri, and destined to Clyde, Missouri. The federal statute which we are called upon to construe, so far as concerns this particular question, provides as follows:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 8 U. S. Comp. St. sec. 8657.

In order for a case to come within the provisions of the act, assuming the element of negligence, it will be noted that four essential facts must be concurrent: First, the defendant must be a common carrier by railway; second, must be engaged in commerce between states; third, the complainant must be an employee of the carrier; fourth, he must be injured by the carrier in interstate commerce. The defendant claims that the particular service which the

plaintiff was performing for the carrier when he received
the injury was not a part of interstate commerce, and
hence his case does not come within the act. We cannot
adopt this view. It is not unreasonable to say that any
common carrier by railway in the United States, whose
system extends across state lines, may be engaged simul-
taneously in both interstate and intrastate commerce. To
hold that the federal statute attempts to discriminate be-
tween cases where an employee is injured while handling
a package of interstate freight and one of intrastate
freight seems to us to be an unreasonable construction
thereof. The statute provides that, if the injury occurs
*"while he is employed by such carrier in such commerce,"*
the statute becomes applicable. Under this language we
are constrained to take the view that the word "employed"
does not necessarily have reference to the particular ser-
vice that the employee was performing when he received
his injury, but to the general service that he is performing
for the carrier, whether that of brakeman, fireman, en-
gineer, or any other employment in which common car-
riers employ men. The test as to the applicability of the
statute is determined by the relation the train itself sus-
tains toward interstate commerce. If the instrument or
agency of the carrier, at the time of the accident, was
capable of being used for the transportation of commer-
cial commodities, received at a point in one state and con-
signed to a point in another state, then such train is an
instrument of interstate commerce, and during the time
it is making its regular run from a point in one state to
a point in another is engaged in interstate commerce. It
then follows that, if a brakeman employed by the carrier
is negligently injured by such train while it is thus en-
gaged, the federal statute becomes applicable to the sit-
uation, even though the injuries were received while the
employee at the time was engaged in the immediate service
of handling intrastate freight. Defendant cites the case
of *Illinois C. R. Co. v. Behrens*, 233 U. S. 473. That case
is clearly distinguishable from the instant one. In the
*Behrens* case all the cars in the train upon which a fireman

was killed were loaded with intrastate, freight. Clearly, such a train is not an instrument of or engaged in the furtherance of interstate commerce. We think the rule has been very ably stated as follows:

"The service being rendered by an employee at the time of his injury may have a double aspect towards commerce. It may, as in that case, clearly be service in interstate commerce, yet at the same time be in furtherance of local commerce or of purposes not directly related to commerce of any sort. Yet, in such a case, participation in interstate commerce being shown, it is of no consequence, in determining the applicability of the liability statute, that he was also serving otherwise than in such commerce. And this is none the less true although the interstate service was in fact incidental to the other. The demands of the federal law being paramount, existence of interstate service in any degree controls the situation and renders the federal liability statute applicable. An extreme and a proper application of this principle is the following: A brakeman injured on a train containing nothing but intrastate shipments has no remedy under the federal act, but the minute that any species of merchandise destined to a point beyond the state is placed in that train, then, if the brakeman on that train is injured, he is engaged in interstate commerce, although every other commodity in that train is a shipment between two points in the same state." 2 Roberts, Federal Liabilities of Carriers (2d ed.) pp. 1375, 1376.

The supreme court of the United States, in discussing the purpose and applicability of the statute in question, states:

"Congress, of course, can do anything which, in the exercise by itself of a fair discretion, may be deemed appropriate to save the act of interstate commerce from prevention or interruption, or to make that act more secure, more reliable or more efficient. The act of interstate commerce is done by the labor of men and with the help of things; and these men and things are the agents and instruments of the commerce. If the agents or instruments

are destroyed while they are doing the act, commerce is stopped; if the agents or instruments are interrupted, commerce is interrupted; if the agents or instruments are not of the right kind or quality, commerce in consequence becomes slow or costly or unsafe or otherwise inefficient; and if the conditions under which the agents or instruments do the work of commerce are wrong or disadvantageous, those bad conditions may and often will prevent or interrupt the act of commerce or make it less expeditious, less reliable, less economical and less secure." Second Employers' Liability Cases, 223 U. S. 1.

When this accident occurred the train stopped, the injured employee was taken back several miles to a hospital, the commerce of an interstate train was interfered with by this accident, and thus interstate commerce was interrupted. The service that the plaintiff was performing at the time was one so intimately connected therewith and incident thereto that it may logically be said to be a part of interstate commerce sufficient to bring the case within the provisions of the act. *Illinois C. R. Co. v. Behrens*, 233 U. S. 473; *Hensley v. Chicago, St. P., M. & O. R. Co.*, 118 Neb. 690; *Erie R. Co. v. Welsh*, 242 U. S. 303; *Illinois C. R. Co. v. Perry*, 242 U. S. 292.

In connection with the defendant's argument on this point, he claims that the depot platform is not within the provisions of the act. The statute makes use of the words *"works or other equipment"* in describing the property of the carrier upon which such a liability could arise. We take the view, and consequently hold, that the depot platform falls within the classification of "works or other equipment" as mentioned in the statute.

In view of the foregoing, the trial court committed no error in overruling the defendant's motion for a directed verdict.

The defendant asserts that the trial court committed error in permitting the witness Voyles to testify as to repairing the depot platform at the point where the injury occurred, after the accident. This witness, a bridge builder and carpenter for the defendant, was called to give testi-

mony on behalf of the plaintiff. He testified that he made an examination of the platform approximately two months after the accident occurred; that he discovered some stringers supporting the platform were decayed. On cross-examination he stated that he removed 16 or 17 feet of the platform floor, but gave no reasons for its removal. On redirect examination the plaintiff then went into the situation quite extensively. The witness was asked why he removed the boards, and he answered, to repair the platform and put in new sills. He was further asked if he replaced the sill shown in the picture, which the testimony shows was decayed, and he answered that he put in two more stringers immediately south of the one which the plaintiff contended was defective. There was no contention on the part of either of the parties that the platform floor was defective. The only reference made on cross-examination, brought out by the defendant, was that the witness removed some of the platform floor. It must not be overlooked that the plaintiff bases his right of recovery upon the claim that sills supporting the platform at the place of injury were so decayed that they did not properly, without sagging, bear the weight of the plaintiff. It was the plaintiff himself who elicited the testimony with reference to the extent, kind and reasons for making such repairs.

The rule seems to be quite universally accepted that evidence of subsequent repairs and precautions taken after an injury has occurred is not admissible. This rule reposes in sound reason and public policy. If the owner of property discovers that a third person has been injured by in some way coming in contact with such property, humanity requires that the owner take some precaution to prevent the recurrence of injury even though he may not be legally liable therefor. If the owner has to suffer a penalty for taking such precaution, such a rule would be against public policy and the courts quite universally condemn it for that reason.

To permit parading before a jury the humanitarian act of one who, after he has learned of an accident, honestly

endeavors to prevent its recurrence is entirely too unwholesome to have any standing in courts of justice. Certainly, the jury should not be permitted to speculate upon such a circumstance as being a confession of negligence. We think the reception of this testimony was highly prejudicial to the rights of the defendant and should have been excluded by the trial court. To admit it over the objection of the defendant constitutes reversible error.

"Evidence of subsequent repairs made or precautions taken after an accident or the infliction of an injury is not admissible to prove antecedent negligence."

"The testimony would naturally impel the jurors to believe the railway company had ascertained its fault and was endeavoring to repair its dereliction, hence without question it had admitted its negligence." *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657. See *Tankersley v. Lincoln Traction Co.*, 101 Neb. 578; *Standard Oil Co. v. Tierney*, 92 Ky. 367; *Hodges v. Percival*, 132 Ill. 53; *Anson v. Evans*, 19 Colo. 274; *Sylvester v. Town of Casey*, 110 Ia. 256.

No further discussion of the various assignments of error is necessary. For reasons herein stated, the judgment is reversed and the cause remanded.

REVERSED.

The following opinion on motion for rehearing was filed December 5, 1930. *Former judgment of reversal vacated, and judgment of district court affirmed.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOOD, J.

This cause, while pending on motion for rehearing, has been reargued and will be treated as though a rehearing had been allowed. The former opinion appears *ante*, p.—, to which the reader is referred for a full statement of the issues and the facts.

In the light of further oral argument and aided by additional briefs, we have reexamined the entire record. In the former opinion all errors discussed, save one, were determined adversely to defendant. Reversal of judgment for plaintiff was directed on the proposition that the court committed prejudicial error in admitting evidence that, since the accident resulting in plaintiff's injury, defendant had repaired the alleged defects in its station platform. We are satisfied with the determination of the issues raised and discussed in the former opinion, save the one on which reversal was directed. These questions, therefore, will not be again discussed.

Plaintiff's injury occurred on December 13, 1926. A bridge carpenter in defendant's employ was a witness for plaintiff, and, without objection, testified that in March or April, 1927, he examined the platform and the stringers thereunder at the point where plaintiff slipped upon the platform and received his injuries. The witness identified a photograph of the premises, which photograph was taken shortly after the accident, and testified that it showed the condition of the platform and stringers as he observed them in March or April, 1927, and that the sill was "rotten, decayed." He was then asked to what extent it was rotten or decayed. Defendant objected for the reason that the examination was made by the witness several months after the occurrence of the alleged accident, and that evi-

dence as to the condition of the platform at the time of the examination by the witness was incompetent and immaterial. The objection was overruled, and the witness answered: "It was so rotten that it won't take the weight of the platform, the nails would not hold it in." On further inquiry he testified that the east end of the stringer, to the extent of six or seven feet, was fairly good, and, further, that four or five feet of the stringer was in the worst condition. The stringer to which this testimony related was the one next to the rail or outer edge of the platform. The witness was then asked as to the condition of the next two stringers nearest to the outer edge, and he testified: "They was rotten."

It will be observed that up to this point no question of repairs had been raised in the examination. On cross-examination, the witness testified as to how the platform was constructed; that the stringers or sills of the platform were 4-inch by 6-inch timbers, and that there were five stringers in the platform. He was further asked whether the planks constituting the surface of the platform were in good condition, and he answered: "They look like they was good." The following cross-examination appears: "Q. Well, were they, you were there? A. Yes, sir; I was there. Q. And were they solid planks? A. Lots of planks in platforms look good until you go to take them out. Q. I am speaking about the fact as shown in this photograph and your observation there. A. You want to know, was they good? Q. Were they solid planks, I mean the two-inch planks, were they solid planks? A. No, sir; they was not good planks. Q. And did you remove any of those planks? A. Yes, sir. Q. How many did you take up? A. We took up around 16 or 17 foot of that platform." On redirect examination he was asked: "You say you removed the boards of the platform? A. Yes, sir. Q. Why did you do that? A. To repair the platform, put in sills. Q. Put in new sills? A. Yes, sir. (Up to this point no objection had been interposed on redirect examination.) Q. Did you replace the sill that was at the place shown between the two upright pieces in exhibit 4?" Defendant objected as in-

competent, irrelevant and immaterial. For the first time objection was made that it was not proper to show subsequent repairs as indicative of negligence at the time of the accident.

It will be observed that the question of the removal of the planks from the platform was brought out by defendant. The witness had previously testified, on direct examination, as to the rotten condition of the stringers. When defendant went into the question of removal of the planks, we think it opened up the subject of repairs.

Section 8849, Comp. St. 1922, in effect, provides that, when a part of an act or transaction has been given in evidence by one party, the whole subject may be inquired into by the other party. Defendant brought out a part of the transaction, and plaintiff was entitled to have the whole transaction disclosed to the jury. We think there was no error in the ruling of the court in this respect. In the direct examination of the witness plaintiff scrupulously refrained from any reference to repairs made in the platform, and limited the examination of the witness to what he found as to the condition of the stringers under the platform. Defendant then showed the alteration and the removal of a part of the platform. The reason for such act was a proper subject of inquiry on redirect examination.

An assignment of error, not discussed in our former opinion, is that the verdict is so excessive as to appear to be the result of passion or prejudice. The verdict was for $24,375. It seems large, but plaintiff's injuries and resulting damages are great. He is 24 years of age and unmarried. He has lost a leg and must go through life a cripple. He will be forever barred from many lines of gainful employment, and his earning capacity will be greatly reduced in such occupations as will be open to him. His opportunity for contracting a desirable matrimonial alliance will be lessened. The humiliation of being maimed will be ever present. He has suffered intense and excruciating physical pain. The stump of his leg is in such condition that he cannot continuously wear an artificial limb

unless he submits to a further surgical operation to remove more of the bone and provide an adequate flap or cushion. It must be remembered, too, that there is no definite rule by which to measure damages in such a case. It is usually left to the sound discretion of the jury to determine the amount. Unless there is evidence to indicate that the jury acted from caprice, passion, or prejudice, a reviewing court will not disturb the verdict, unless it can say, as a matter of law, that the verdict is so excessive as to be unjust and to require a remittitur or reversal. From a careful review of the entire record, we are unable to say that there is any evidence that the jury acted from passion, prejudice, or caprice, and we are unable to say, as a matter of law, that the verdict is so excessive as to require a remittitur or reversal.

Other assignments of error, not discussed herein, have received consideration. No prejudicial error has been found.

That part of our former opinion which holds that there was prejudicial error in the reception of evidence and the judgment of reversal are withdrawn; in other respects the opinion is approved.

The judgment of the district court is

AFFIRMED.