ELMER W. RING, APPELLEE, V. RICHARD J. KRUSE,
APPELLANT.

62 N. W. 2d 279

Filed January 22, 1954.   No. 33371.

(1)

2

*Young, Williams & Holm, Keith Miller* and *Alfred D. Raun,* for appellant.

*Mark J. Ryan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Elmer W. Ring brought this action to recover damages for personal injuries alleged to have been proximately caused by the negligence of defendant Richard J. Kruse, his agents and employees. His agents and employees were Paul Johnson, foreman of defendant's livestock and feeding operations in Thurston County, who had general charge of employing, supervising, and discharging help on defendant's farm and who employed plaintiff on February 3, 1949, to help them "a few days," and Fred Drapeau, a farm hand, who plaintiff alleged was a superior employee or servant, authorized to give orders and directions to plaintiff, an alleged subordinate employee.

The negligence charged by plaintiff was in ordering and directing him to start a defective International farm tractor, property of defendant, by cranking it by hand while another tractor was being used to start it by means of a belt and pulley, and in furnishing plaintiff defective and unsafe machinery with which to work, which

allegedly placed plaintiff "in an unusual and extraordinarily hazardous position in his employment, and that condition could not have been known or could have been foreseen by him; that plaintiff was unfamiliar with the defective condition of said tractor, its magneto, and its spark plugs." Defendant for answer denied generally but admitted that he was engaged in livestock feeding and farm operations; admitted that Paul Johnson was his manager or foreman thereof, who so employed plaintiff on February 3, 1949; and admitted that plaintiff received a broken arm while starting the tractor belonging to defendant. Defendant then alleged that injuries received by plaintiff, who was an experienced operator of tractors like the one involved, and familiar with all the details of starting same, were solely and proximately caused by plaintiff's own negligence, in that he voluntarily attempted to start the tractor without putting down the impulse on the magneto thereof. Both at conclusion of plaintiff's evidence and at conclusion of all the evidence, defendant moved to direct a verdict, but such motions were overruled and the issues were submitted to a jury which returned a verdict for plaintiff in the sum of $2,500, and judgment was rendered thereon. Defendant's respective motions to vacate and set aside the verdict and judgment and correct the court's alleged error in overruling his motion to direct a verdict "at the condlusion (sic) of all of the testimony," and for new trial, were overruled. Thereupon defendant appealed, assigning substantially that: (1) The verdict and judgment were not sustained by sufficient evidence and were contrary to law, as in violation of the doctrines of assumed risk, contributory negligence, and fellow servants; and (2) the trial court erred in admitting certain incompetent evidence and in the giving and failing to give certain instructions. We sustain the first assignment, and for that reason the giving or failing to give instructions requires no further discussion.

On the other hand, the record discloses that defendant

made no objection whatever to the incompetent evidence admitted, about which he now complains. Such evidence was adduced by one of plaintiff's witnesses with relation to purported subsequent repairs made upon the tractor by replacement of its magneto and a couple of spark plugs in an attempt to establish that on February 3, 1949, they were defective. Defendant not only made no objection thereto, but cross-examined the witness at length with regard to the testimony so given, and did not subsequently move to strike the same. A comparable situation will be found in Lindley v. Wabash Ry. Co., 120 Neb. 195, 231 N. W. 812, with another opinion thereon upon motion for rehearing at page 204, 233 N. W. 450, certiorari denied, 283 U. S. 863, 51 S. Ct. 655, 75 L. Ed. 1468.

As held in Combs v. Owens Motor Co., 121 Neb. 5, 235 N. W. 682, the general rule is that: "Errors, if any, in receiving incompetent evidence are presumed to have been waived, unless objected to when the evidence is offered."

In any event, as hereinafter observed, there was some evidence from which it could have reasonably been concluded that the magneto on the 22-36 tractor might have been subsequently replaced by another, but if that were true, of which there is doubt, there is no competent evidence whatever that the magneto removed was then or theretofore defective in any manner. The witness testified also that a couple of spark plugs, "fouled and like in any tractor, need replacing after a certain length of time" or "they won't start in cold weather," were subsequently replaced in the 22-36 tractor, but there was no competent evidence from which it could have been reasonably concluded that defendant or his employees knew or should have known that the spark plugs had such a latent defect at time of accident or that in any event it proximately caused the tractor to kick back and break plaintiff's arm. The evidence is to the contrary. In that situation, testimony of the witness could

not have been prejudicial but rather was beneficial to defendant.

In Chicago, B. & Q. R. R. Co. v. Kellogg, 55 Neb. 748, 76 N. W. 462, this court held: "Where a servant sues his master on account of injuries resulting from the use of a defective tool or appliance, the fact that the accident happened cannot be taken as evidence of the master's negligence.

"To entitle the plaintiff to a verdict in such case, he must affirmatively show that the defendant either knew or was inexcusably ignorant of the defective condition of the implement or appliance causing the injury."

There are certain other applicable rules which are controlling here. It is now elementary, as held in Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107: "A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence."

In Langenfeld v. Union P. R. R. Co., 85 Neb. 527, 123 N. W. 1086, followed in McDonald v. Omaha & C. B. St. Ry. Co., 128 Neb. 17, 257 N. W. 489, it was held: "In order to constitute actionable negligence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure.

"The petition must allege these essential elements, and the proof must support the allegations, or there can be no recovery."

In speaking of the master and servant relation, this court said in Westover v. Hoover, 88 Neb. 201, 129 N. W. 285, 19 A. L. R. 215: "The master is the person in whose work he is engaged, and who has the right to direct and control his actions."

As stated in Cudahy Packing Co. v. Roy, 71 Neb. 600, 99 N. W. 231: "The rule is well settled in this state that it is the duty of a master to use ordinary and reasonable care to furnish appliances reasonably safe for the use of his servants in carrying on his business, and that a failure to exercise such reasonable and ordinary care upon his part renders him liable, if the servant suffers any injury by reason of his negligence in that behalf. The master is not an insurer of the safety of the appliances which he furnishes. If he exercises the reasonable care which a prudent man would ordinarily take for his own safety, under like circumstances, in furnishing his servants with instruments reasonably safe for the particular purpose for which they are used, he has fulfilled his whole duty in that respect."

As stated in Lincoln Street Ry. Co. v. Cox, 48 Neb. 807, 67 N. W. 740: "A master does not insure his servants against defective appliances. He is not chargeable in all events because the appliances furnished his employees are defective. He is liable only when he has been negligent in the matter. The rule is that as to his servants he is bound to use such care as the circumstances reasonably demand, to see that the appliances furnished are reasonably safe for use, and that they are afterwards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice, unless the exercise of ordinary care would have resulted in notice. Sioux City & P. R. Co. v. Finlayson, 16 Neb., 578, Missouri P. R. Co. v. Lewis, supra, Union P. R. Co. v. Broderick, 30 Neb., 735, all recognize this rule."

In Central Granaries Co. v. Ault, 75 Neb. 249, 106 N. W. 418, on motion for rehearing at page 255, 107 N. W. 1015, it was said: "The rule undoubtedly is that the master is not liable for furnishing dangerous machinery and appliances for the use of his servant, for all machinery is more or less dangerous. Employers are not insurers. They are liable for consequences, not of dan-

ger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business." See, also, Phillips v. Chicago, B. & Q. R. R. Co., 119 Neb. 182, 227 N. W. 931.

As stated in 56 C. J. S., Master and Servant, § 171, p. 841: "Where the relation of master and servant exists, the master is liable to the servant for personal injuries sustained by him which have been incurred while he is within the course and scope of his employment, by reason of the master's negligence, except in so far as the common-law rules have been modified or affected by statute, discussed infra § 173, or by the application of the doctrines of assumed risk, infra, §§ 357-420, contributory negligence, infra §§ 421-488, and of fellow servants, infra §§ 321-356."

In 56 C. J. S., Master and Servant, § 382, p. 1189, citing Nebraska cases, it is said: "Except in so far as modified or abrogated by statute, as considered infra § 383, and in the absence of a contract to the contrary, as a general rule, where the servant has actual knowledge of the dangers to which the service exposes him or where the defects or dangers are so patent and obvious that in the exercise of ordinary care, in the performance of the services for which he was employed, he should have known of their existence, he assumes the risk of injury incident to their existence."

It is elementary that contributory negligence by an employee is his failure to use such precautions for his own safety as ordinary prudence requires under the circumstances presented. As stated in 56 C. J. S., Master and Servant, § 433, p. 1257: "An employee is chargeable with contributory negligence where he fails to take due care to avoid defects and dangers which are so open and obvious that anyone in the exercise of ordinary care and prudence would discover them."

As stated in 56 C. J. S., Master and Servant, § 434, p. 1258: "In the absence of any statutory regulation of the subject, where a servant continues work with knowl-

edge, actual or constructive, of dangers which an ordinarily prudent man would refuse to subject himself to, he is guilty of contributory negligence, particularly where he has created the danger." See, also, 56 C. J. S., Master and Servant, § 435, p. 1259, where it is said: "Where a danger is as open and obvious to the servant as to the master, or where the servant has better means of knowledge than the master, he will be charged with such negligence as to bar a recovery. So too where it does not appear that the master knew or with ordinary care ought to have known of the defect which caused the injury, and it does appear that the servant had equal means with the master of ascertaining its existence, the servant cannot recover."

As stated in Restatement, Agency, § 521, p. 1220: "Except as provided by statute and subject to the limitation stated in §§ 522-524, in the absence of an agreement to the contrary, a master is not liable for harm caused by an unsafe state of the premises or of other conditions of the employment to a servant who, knowing the facts and understanding the risks therein, voluntarily enters or continues in the employment."

Further, as stated in 56 C. J. S., Master and Servant, § 327, p. 1085: "It has frequently been stated that all serving a common master working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow servants. More briefly, it is sometimes stated that all persons are, at least prima facie, fellow servants who are in the common service of, and controlled by, a common master. It is not necessary that they be hired or discharged by the same superior agent of the master, or that they be employed for the same time, or that the amount or manner and time of payment of wages be the same; and in contemplation of law one may be a fellow servant without having been actually employed by the master himself."

In Bryant v. Beebe & Runyan Furniture Co., 78 Neb. 155, 110 N. W. 690, this court held: "Ordinarily, in forecasting the probable consequences of his own acts or omissions, an employer may rely on the presumption that each employee will exercise due care not only to avoid injury to himself, but to his coemployees."

In Poos v. Krug Brewing Co., 101 Neb. 491, 163 N. W. 840, L. R. A. 1918D 515, this court held: "The liability of the employer is determined by the nature of the act in question; and if 'the nature of the act in question' establishes that the accident was caused by the negligence of a fellow servant, and not by any defect in the place to work or in the tools or instrumentalities to be used, the employer is not liable.

"If the place to work and the tools and instrumentalities with which to work are reasonably safe, the employer is not liable for a misuse of such tools and instrumentalities by a fellow employee who is employed with reasonable care as to his fitness and carefulness.

"The employer is not liable for anything that he could not avoid by the exercise of foresight and care. He could not anticipate and avoid the negligence of a competent employee." See, also, Restatement, Agency, § 474, p. 1114.

In the light of the foregoing rules, we have examined the record. The parties herein will be designated as plaintiff and defendant. Paul Johnson will be designated as defendant's foreman, and Fred Drapeau as Drapeau or "the other hired man" as he was designated by plaintiff.

The following is either without dispute or the only conclusions that could reasonably be derived from the evidence adduced: At the time of trial plaintiff was a farm hand nearing 53 years of age. At time of accident he was 48 years old. He lived on a farm with his parents from 1901 until 1926 when he began substantial farming operations for himself. Except for 2 years, 1935 and 1936, he was so engaged until 1945. During almost all of that period he had owned and operated

farm tractors which were comparable with that here involved, none of which had self-starters, and when he started them he had always first pushed the impulse down, or some one else had done it for him. During 1935 and 1936 he worked some on farms with farm tractors. During 1946 he did a little farming for himself on shares and worked as a farm hand for defendant and others. During part of 1946, 1947, and 1948, plaintiff worked upon the farm here involved, where, in performing his farm work, he had generally started and operated farm tractors which were, not self-starting. In that connection, there can be no other reasonable conclusion, despite plaintiff's evasive protests to the contrary, except that he had owned and was an experienced operator of different kinds of farm tractors which, like the one here involved, did not have self-starters, and he was entirely familiar with all the details of starting and operating them. As a matter of fact, he sold an old International 22-36 tractor to defendant in 1947 or 1948. Defendant's check in payment therefor appears in the record, dated December 1, 1948.

Defendant lived in Omaha. He operated a commission firm in South Omaha and owned, or leased and operated, a livestock farm in Thurston County where plaintiff had previously on several occasions been employed as a general farm hand. Defendant went up to his farm every week or two to observe its operations over which Paul Johnson was foreman. Defendant owned several farm tractors, among which was a 1932 International 22-36 tractor here involved. It had been overhauled in 1946 or 1947 and had been generally used a day or more every week for feed grinding purposes during the past 2 years, without any notice or knowledge that it was defective in any manner. Defendant knew nothing of plaintiff's injuries until February 5, 1949, when he drove to the farm, where he inspected the tractor and found it in very good operating condition. He had never previously received any complaint that it was de-

12

fective in any manner, or was difficult to start. Defendant's foreman and the other hired man both verified such evidence.

On February 3, 1949, defendant's foreman was in town where he met plaintiff who asked permission to ride out to the farm with him, from which point plaintiff could walk a mile east thereof to his mother's home. It was agreeable with the foreman, and they arrived at defendant's farm about 10 a. m. There they had coffee together. It was a cold day, zero or below, with heavy snow, and the foreman, not feeling very well, asked plaintiff to help them a few days. Plaintiff consented, and after being fitted out with heavy jacket, mittens, and six-buckle overshoes, the foreman told him they were going to grind feed, and instructed him to "go out and scoop the hammer mill out and zerk it" and "then wait for me." Plaintiff denied that the foreman said "then wait for me" but did not claim to have received any further instructions from the foreman. When plaintiff had finished the work he was instructed to do, the foreman had gone back to the house. Then, hearing a noise in the corn crib, plaintiff went there, where he found Drapeau, the other hired man, trying to start an F-30 tractor by cranking it and plaintiff either volunteered or was asked to assist. Something was broken under the radiator, so plaintiff voluntarily corrected that and cranked the tractor, which started at once, and it was backed out of the corn crib. At this point it should be said there is no competent evidence from which it could be reasonably concluded that Drapeau was a superior servant or that plaintiff was a subordinate servant. Drapeau was simply another competent and experienced hired man, who had been employed by defendant for several years, with no right of supervision or authority over plaintiff. They were simply fellow servants employed by and under the direct supervision and control of the same master, defendant's foreman, in the same farm work enterprise.

Drapeau then said that he would "crank the grinding tractor, which is the 22-36 * * * with the Ferguson," a self-starting tractor. As requested by Drapeau, plaintiff started the Ferguson and drove it to the corn crib where they connected a continuous belt and pulley between the Ferguson and the 22-36 tractor, and made it tight by jacking the two apart in order to turn over the 22-36 in an attempt to start it. The belt remained intact on the tractors at all times. Drapeau got up on the seat of the 22-36 and stepped on the clutch while plaintiff sat on the Ferguson. Drapeau made no other adjustments for starting the 22-36 after plaintiff returned. Plaintiff then put the Ferguson in gear, pushed down the lever, let out the clutch, and speeded it up, but the 22-36 did not start. Drapeau then told plaintiff to jump off and crank the 22-36 while he followed with the belt. Plaintiff did so, whereupon it started, ran for about 30 seconds, and stopped. Plaintiff then cranked it again as directed and it kicked or backfired, breaking his arm. In that connection, the impulse on the 22-36, which should have been pulled down to retard and give a hotter spark and prevent backfiring, could not be operated from the seat of the tractor where Drapeau sat, but only by a person standing, as plaintiff was, down on the ground much nearer, a step or two, from where plaintiff was cranking the tractor. There is no evidence that it had ever theretofore backfired with the impulse down. In that connection, plaintiff admitted that he did not push the impulse down before cranking it. Sometime after the accident plaintiff, pointing to the 22-36 here involved, told the foreman and others that it would kick "if you don't put the impulse down." At another time, plaintiff said to the foreman, "I don't know how it happened. * * * it was no fault of yours." Several times plaintiff told the foreman that the accident resulted because "he" plaintiff, "forgot to push the impulse down." In that regard, plaintiff told another witness that "he forgot to check the impulse," to see

whether or not it had been pushed down. Plaintiff told still another witness "I must have forgot to put the impulse down." Plaintiff, in his testimony, denied that he told the foreman "I don't know how it happened" or that "he forgot to push the impulse down." However, plaintiff did not deny the other alleged statements aforesaid made to the other witnesses. Defendant and the foreman both knew that the 22-36 had been started sometimes in cold weather by use of a belt connection to another tractor, but there was no evidence that it was dangerous to do so. In that connection, an experienced mechanic who testified for plaintiff said, "I have used it lots of times" but "It wouldn't be too safe" to "have some one engage the crank and follow around." In that regard, also, an experienced mechanic who testified for defendant said, "It isn't good practice. * * * It would be a dangerous practice, * * *." There was no evidence that such method was ordinarily used or that any one had ever previously used such method, and clearly neither defendant nor his foreman knew that plaintiff and Drapeau were using it. Assuming, as plaintiff would have us do, that it was a dangerous practice to "have some one engage the crank and follow around," it was one which should have been observable and well known to plaintiff, who assumed the risk thereof. Further, we conclude that the accident was proximately caused by the negligence not only of plaintiff's fellow servant, who without authority directed how the starting of the tractor should be done, but as well by plaintiff's own negligence more than slight as a matter of law, both by undertaking it and by doing so without first pushing the impulse down, well knowing that there was danger such failure would cause the tractor to backfire.

For the reasons heretofore stated, the judgment of the district court should be and hereby is reversed, and the cause is remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.